

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–15–58

| | |
|---|---|
| JACOB MICHAEL FOSTER<br>APPELLANT | Opinion Delivered JUNE 17, 2015 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR13-2268] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | AFFIRMED |

## CLIFF HOOFMAN, Judge

Jacob Foster appeals after he was convicted by the Pulaski County Circuit Court of possession of a controlled substance schedule I or II not meth/cocaine in violation of Arkansas Code Annotated § 5-64-419(b)(2)(A) (Supp. 2013) and possession of a controlled substance schedule VI in violation of Arkansas Code Annotated § 5-64-419(b)(5)(i). He was sentenced to serve forty-eight months' probation on each count to be served concurrently, to pay a fine of $1,000, and to pay court costs and fees. On appeal, appellant contends (1) that the trial court erred in denying his motion to suppress the State's evidence in violation of Arkansas Rule of Criminal Procedure 3.1 and the Arkansas and United States Constitutions and (2) that the trial court erred in denying his motion for a directed verdict. We affirm.

Appellant was charged by information with possession of a controlled substance schedule I or II not meth/cocaine in violation of Arkansas Code Annotated § 5-64-

419(b)(2)(A) and possession of a controlled substance schedule VI in violation of Arkansas Code Annotated § 5-64-419(b)(5)(i) on July 16, 2013. Appellant waived his right to a jury trial, and he filed a motion to suppress the physical evidence on January 13, 2014. Because appellant had waived the right to a jury trial, the trial court heard the motion to suppress in the course of the bench trial without an objection.

Detective Cindy Harbour testified at trial that she received a call from dispatch that there was a "domestic physical in progress." Later, dispatch explained that it was not physical but that "he was simply banging on the door trying to get in according to the caller." Additionally, dispatch explained that the woman on the phone was frantic and had exclaimed, "He's trying to get into my house. He's trying to kick in my door." Furthermore, dispatch told Detective Harbour that the man was leaving the scene in a white pickup truck and that there was an active order of protection against him in the system. During cross-examination, she specifically testified that "at the time [the Arkansas Crime Information Center] said that [the order of protection] was active, and [that she] had a printout showing that it was active." Therefore, even though it had been dismissed, as it was later discovered, she did not know it at the time. Thus, she conducted an investigative stop when she saw a vehicle matching the description on the street leaving the area. After Detective Harbour testified regarding the circumstances of the stop, the trial court denied the motion to suppress, finding that the stop was justified.

Detective Harbour testified that appellant was extremely upset. As she tried to calm him, he kept stating that he did not want to go to jail. After smelling a strong odor of

marijuana, she asked him if he had marijuana in the vehicle. At first, appellant denied having marijuana but later opened the console and handed Detective Harbour a marijuana joint after she stated that she was going to ask him to step out of the vehicle to search it. She additionally noticed a large amount of cash, which appellant explained was his paycheck. After appellant stepped out of the vehicle and the officer riding with her placed appellant in handcuffs, she found a ziplock bag in the console containing a pill and about a quarter of another pill. She sent the partial pill to the Arkansas State Crime Lab for testing.

Benjamen Gilbert, a forensic chemist at the crime lab, testified that the partial pill weighed 0.0824 grams and that the tests confirmed that it was morphine. Furthermore, he confirmed that another exhibit contained 0.7149 grams of marijuana. He explained that he crushed the partial pill to test it and compared it to another morphine sample. The samples are good for one year from the date that they are made, but he did not have the date of that particular sample with him at trial. However, he testified that he checked the sample and would not have used the sample if the date on the vial was beyond its expiration date.

After the State rested, appellant moved for a directed verdict, arguing that the evidence should be suppressed based on a violation of Arkansas Rule of Criminal Procedure 3.1 and the Fourth Amendment to the United States Constitution. Additionally, appellant alleged that the State failed to prove beyond a reasonable doubt that he knowingly possessed a usable amount of morphine. The trial court stated that it was "going to deny [the] motion for directed verdict on 3.1 and also on the usable amount." After appellant questioned about the "knowingly standard," the trial court denied the motion on that basis as well. Subsequently,

SLIP OPINION

the defense rested and renewed the motion for directed verdict and previous arguments. The trial court again denied the motion for a directed verdict and found appellant guilty on both counts. Appellant was later sentenced to forty-eight months' probation on each count to be served concurrently, in addition to a $1,000 fine plus court costs and fees. This appeal followed.

Although appellant presents his challenge to the trial court's denial of his motion for a directed verdict as his second point on appeal, we must address such a challenge first for purposes of double jeopardy. *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510. Although appellant moved for a directed verdict, such a motion at a bench trial is a motion for dismissal. *Thornton v. State*, 2014 Ark. 157, 433 S.W.3d 216. A motion to dismiss at a bench trial and a motion for a directed verdict at a jury trial are both challenges to the sufficiency of the evidence. *See* Ark. R. Crim. P. 33.1 (2014). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Thornton*, *supra*. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id*.

Appellant does not contest the sufficiency of the evidence regarding his conviction for possession of marijuana in violation of Arkansas Code Annotated § 5-64-419(b)(5)(i). Instead, appellant first argues that there was no evidence to indicate that he knew that the partial pill was morphine or that it was even present in the vehicle. Arkansas Code Annotated §

5-64-419(b)(2)(A) states that it is unlawful for a person to possess a schedule I or schedule II controlled substance that is not methamphetamine or cocaine with an aggregate weight, including an adulterant or diluent, of less than two grams. Generally, it is not necessary for the State to prove literal physical possession of contraband in order to prove possession. *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002). Rather, possession of contraband can be proved by constructive possession, which is the control or right to control the contraband. *Id.* In order to prove constructive possession, the State must establish beyond a reasonable doubt that the defendant exercised care, control, and management over the contraband. *Id.* Constructive possession can be implied where the contraband was found in a place immediately and exclusively accessible to the accused and subject to his control. *Id.*

Appellant mistakenly asserts that the State was required to prove that he knew it was contraband. However, the State needs to prove that the accused knew that the matter possessed was contraband only in joint-occupancy cases. *Carter v. State*, 2010 Ark. 293, 367 S.W.3d 544; *Polk, supra.* This was not the case here. It was undisputed that appellant was driving the vehicle, was the sole occupant in the vehicle, and even handed the officer the marijuana from the same center console that also contained the partial morphine pill.

Additionally, appellant argues that Gilbert was unable to provide the expiration date of the sample used to test the partial morphine pill and that there was no evidence that the amount tested was a usable amount. Although appellant argues that the sample could have been expired and "totally ineffective," Gilbert specifically testified that he checked the sample and would not have used the sample if the date on the vial was beyond its expiration date.

5

Finally, although appellant correctly asserts that the State was required to prove that the partial morphine pill was a usable amount, this court has held that there was evidence sufficient for the fact-finder to determine that the substance was of a measurable amount when there was testimony that the substance was capable of quantitative analysis, could be seen with the naked eye, was tangible, and could be picked up. *Sinks v. State*, 44 Ark. App. 1, 864 S.W.2d 879 (1993). Here, Gilbert testified that the substance he tested was a partial pill that weighed 0.0824 grams and tested positive for morphine after he crushed it. Clearly, the standard explained in *Sinks* was met here. *Id.* Therefore, the verdict was supported by substantial evidence, and we affirm.

In addition to challenging the sufficiency of the evidence, appellant contends that the trial court erred in denying his motion to suppress the State's evidence in violation of Arkansas Rule of Criminal Procedure 3.1 and the Arkansas and United States Constitutions. Appellant specifically argues that the detective had no reason to suspect that criminal activity was occurring when the detective detained him because dispatch had told the detective that they had received a report that someone was simply banging on the alleged victim's door. Therefore, appellant argues that the detective should have investigated the incident by talking to the alleged victim before having a conversation with appellant. Furthermore, appellant notes that "the no contact order had been dismissed on May 2, 2014 about 18 days before [his] arrest at the request of the alleged victim." Appellant concedes that there was probable cause to search the vehicle after the officer had been given the marijuana, but he argues that the detective violated Rule 3.1 prior to this discovery. Appellant's arguments, however, are

misplaced.

On review of a trial court's denial of a motion to suppress evidence, this court reviews the trial court's factual determinations for clear error, while reviewing its legal conclusions de novo. *James v. State*, 2012 Ark. App. 118, 390 S.W.3d 95. Consistent with this standard, this court defers to the superior position of the trial court to determine the credibility of witnesses and to resolve evidentiary conflicts, but resolves legal questions through an independent determination based on the totality of the circumstances. *Id*.

Pursuant to Arkansas Rule of Criminal Procedure 3.1, a police officer may, in the performance of his or her duties, stop and detain any person who he or she reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger of forcible injury to persons or damage to property. Under this rule, the key word is "suspects," and reasonable suspicion does not require that an officer "rule out the possibility of innocent conduct." *James, supra* (quoting *United States v. Arvizu*, 534 U.S. 266 (2002)). "Reasonable suspicion" is defined as a suspicion based on facts or circumstances, which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion. Ark. R. Crim. P. 2.1. The determination of whether an officer has reasonable suspicion under the totality of the circumstances includes whether an officer has specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *James, supra*. Furthermore, the facts articulated must be considered together as a whole and not in isolation. *Id*.

Here, Detective Harbour testified that she received a call from dispatch explaining that

a woman, who was frantic on the phone, had exclaimed, "He's trying to get into my house. He's trying to kick in my door." Furthermore, dispatch told Detective Harbour that the man was leaving the scene in a white pickup truck. Finally, she observed appellant, who matched the description given by dispatch, trying to leave the area. Thus, under these circumstances, Detective Harbour had a reasonable suspicion that appellant may have been involved in such criminal activity to detain him under Rule 3.1, and we affirm the trial court's denial of appellant's motion to suppress the evidence seized pursuant to the stop and the subsequent discovery of the drugs found therein.

Affirmed.

KINARD and WHITEAKER, JJ., agree.

*Daniel A. Webster*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.