BRANDON J. HARRISON, Judge
Frederick Allan Williams appeals his conviction for residential burglary and the revocation of his suspended imposition of sentence (SIS) in two other cases based on the commission of the residential burglary. He also asserts that the circuit court committed errors in sentencing. We reverse his conviction. We also reverse the revocation of his SIS and remand for further proceedings.
I. Facts
In case number CR-10-3907, Williams pled guilty to possession of cocaine with intent to deliver and possession of marijuana and was sentenced to five years' probation. In November 2012, the State petitioned to revoke Williams's probation because he had failed to make monthly visits to his probation officer and failed to pay fines and court costs. Williams again pled guilty and was sentenced to six years' probation. In August 2013, the State again petitioned to revoke Williams's probation because he had failed to comply with court-ordered drug treatment and failed to pay fines and court costs. Again, Williams pled guilty and was sentenced to three years' SIS.
In case number CR-13-1218, Williams pled guilty to possession of cocaine, possession of drug paraphernalia, and possession of marijuana with intent to deliver and was sentenced to an aggregate term of eighteen months' imprisonment with three years' SIS.
In November 2015, Williams was charged with aggravated residential burglary, aggravated robbery, theft of property, and possession of firearms by certain persons (CR-15-3677). Regarding the aggravated residential burglary, the State alleged that Williams, while armed with a handgun, had unlawfully entered the home of James Lawrence "with the purpose of committing therein any offense punishable by imprisonment." The State also asserted that Williams was a habitual offender and that a firearm-sentencing enhancement should be applied. Also in November 2015, the State petitioned to revoke Williams's SIS in CR-10-3907 and CR-13-1218 based specifically on the commission of these new offenses.
At a pretrial hearing in August 2016, Williams moved to dismiss the charge of aggravated residential burglary because it was insufficiently drafted. In response, the State moved to "orally amend that the Defendant committed the aggravated residential burglary with the purpose of committing *755 theft of property there within the residence."
The circuit court convened a bench trial in October 2016. James Lawrence testified that on 10 September 2015, he was at home with his wife when a man knocked on their front door and asked for some water. Lawrence filled the water jug, returned to the front door, and gave the jug to the man; at that point, the man pulled out a gun, and the two men started fighting. Lawrence's wife, Courtney, joined in the fight, kicking the man. The man eventually ran away, and Lawrence and his wife went back into the house. They found a man whom Lawrence identified as Williams in their bedroom; Lawrence had grown up with Williams and dated his sister. Lawrence said that Williams pointed a gun at him and said, "I'll kill everybody in here." Lawrence also said that after Williams had left, he noticed that $300 was missing from his dresser.
Courtney Lawrence also testified that on 10 September 2015, a man came to the door, asked for some water, and later pulled a gun and started fighting with her husband on the front porch. She said that she went outside to help her husband and that the man ran away. She then went back into the house and found Williams in her bedroom, and Williams threatened her and her husband with a gun. She also said that Williams took $300 from the dresser, but she admitted that she did not see him take it.
Gary Jones, a detective with the North Little Rock Police Department, testified that Courtney and James identified Williams as a suspect and identified Williams in a photographic lineup. Based on this identification, a warrant was prepared for Williams's arrest, and he was arrested and brought in for questioning on 2 October 2015. The State then played an audio recording of Jones's interview with Williams; in that interview, Williams said that he had given Lawrence $3000 to buy marijuana and that because he never received the marijuana, he had gone to Lawrence's house to get his money back. According to Williams, he did not have a gun, and Lawrence gave him $3000 willingly. Williams claimed to have no knowledge of the fight that had taken place at the front door just before his arrival.
After the State rested, Williams moved to dismiss the charge of aggravated residential burglary:
[T]he State has alleged in the felon[y] information that Mr. Williams did enter or remain in the residential occupiable structure of James Lawrence with the purpose of committing therein a theft while armed with a deadly weapon. ... [I]t is not allowable under the Rules of Evidence to draw one inference from another or to indulge presumption upon presumption to establish a fact. ... No one saw Mr. Williams take any money. No one saw Mr. Williams commit a theft. That must be the underlying charge with the State agreeing they cannot further amend to conform proof. ... They failed, even at the State's best light, to prove that there's a theft.
Williams also moved to dismiss the charges of aggravated robbery, theft of property, and possession of a firearm by certain persons. The court dismissed the charge of possession of a firearm by certain persons; on the charge of aggravated residential burglary, the court stated,
[O]ne of the things on Count 1 that, sure, we don't have anybody-neither one of the victims testified that they saw him take the money. Neither one. And [defense counsel] asked you more than once, is that what you're proceeding on. And you said yes before he got started.
Now I can jump with all this other stuff that, yeah, he went in the house. I *756 believe he went into the house. And he just didn't go in there just to say I showed up with someone. ... And I don't know where I'm going with it at this time, so I'm not sure that I'm right, that I'm going to grant your motion because I'm making a jump here. The problem is, I think he went in with a gun. I just-because they both said they saw it. I think he went in.
Now, I'm having problems with I, II, and III because I'm not sure if there's a theft, but there's a problem. He said he went-came out with $3,000. Now, there's an issue of whether or not he took it from them by force or they just gave it to him.
So therefore, I believe, just based on that, his own testimony from them-from what we just heard as part of the State's case, gave the Court some cause and some concern to shift it back. So based on that, I won't grant your motion for Directed Verdict at this time or to dismiss it based on their case.
After verifying that the court was denying the dismissal of counts I, II, and III, defense counsel stated, "I do think that Count No. 1 asked the Court to consider the lesser included offense of Burglary and for Count No. 2, the lesser included offense of Robbery." The State responded that it did not object to including the lesser offenses, but it believed it had met its burden "for the charges that were made." The court confirmed its denial of the motion for dismissal.
The defense's only witness was Whitney Lewis, Williams's sister, who identified the man who approached the Lawrences' house as her husband's brother, whom she called "Little Joe Cool." According to Lewis, Little Joe and James Lawrence knew each other. After the defense rested, Williams renewed his motion to dismiss:
I'd like to renew all arguments that I made previously. I believe the State has failed and at this time it is not in the light most favorable to the State to show that this man, Frederick Williams, feloniously entered or remained, number one element they failed. Purposely to commit a theft, number-second element, they failed. Armed with a deadly weapon, third element they failed.
Williams also moved to dismiss the charges of aggravated robbery and theft of property, as well as the "alternative lessers, if the Court believed that there was a burglary or robbery. We're asking the Court to dismiss the charges." The court ruled as follows:
I let it go forward because I wanted to listen to see what was-I didn't know what [defense counsel] was going to put on. And he filed a motion to dismiss, but-and I stretched that I and II could maybe-and I didn't presume and do anything because I know those are not good words based on your case that you're going to do. And I know if you appeal then you'll use that, that it's not a presumption and use that to try to see where we were.
Nobody said that there was a theft. So now, does that mean we have an Aggravated Residential Burglary? I can't get that stretched. It requires that you prove that. There was no proof of that. However, he didn't have the right to be in the house, so I'll give you residential burglary. I won't give you aggravated-so I won't give you just total dismissal because I think that if you look at it, he went in there with the purpose of committing an offense punishable by imprisonment. And he was not invited. I think even looking at it, he went in there. Now, he did commit something because he threatened to kill them.
*757 That's-that's what he was-that's what the testimony was.
The court granted the motion to dismiss as to aggravated residential burglary but found Williams guilty of the lesser-included offense of residential burglary. The court found Williams not guilty of aggravated robbery and theft of property. Williams's SIS in CR-10-3907 and CR-13-1218 was also revoked based on the commission of the residential burglary.
In November 2016, Williams filed a motion to reconsider both his conviction and the revocations. He asserted that the State had failed to prove beyond a reasonable doubt one of the elements of the offense. Specifically, Williams argued that the State failed to prove that he had entered the residence with the intent to commit theft of property. He also argued that his acquittal on the theft-of-property charge, as well as its lesser-included offense of attempted theft, was incompatible with his conviction for residential burglary. He argued that it would violate due process to let the contradictory verdicts stand. Finally, Williams said that because the revocations were based on his conviction for residential burglary, the revocations must also be reversed.
The State responded that its amendment to count I to reflect theft of property as the intended crime did not apply to the lesser-included offense of residential burglary and that the court's finding that Williams entered the residence with the intent to threaten Courtney and James fulfilled the requirements of residential burglary. The State also argued that inconsistent verdicts are allowed in bench trials.
The court held a hearing on Williams's motion in January 2017. After hearing arguments from counsel, the court denied the motion to reconsider and sentenced Williams to fifteen years' imprisonment with five years' SIS in all three cases-CR-15-3677, CR-10-3907, and CR-13-1218. Williams appealed.
II. Sufficiency of the Evidence
A motion to dismiss during a bench trial is a challenge to the sufficiency of the evidence. See Ark. R. Crim. P. 33.1 (2017). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. Foster v. State , 2015 Ark. App. 412, 467 S.W.3d 176. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Id. We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. Id.
A person commits residential burglary if he or she enters, or remains unlawfully inside, a residential occupiable structure of another person with the purpose of committing (inside the structure) any offense punishable by imprisonment. See Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013). The offense intended must be identified and is an element of the charge of burglary. Oliver v. State , 286 Ark. 198, 691 S.W.2d 842 (1985).
On appeal, Williams argues that the State's amendment to count I meant that to prove the lesser-included offense of residential burglary, the State had to prove that he unlawfully entered the Lawrence residence with the intent to commit theft of property. Therefore, he says, the circuit court erred when it found Williams guilty of residential burglary based on an intent to commit some other offense punishable by imprisonment.
The State contends that substantial evidence supports Williams's conviction for residential burglary because it introduced *758 sufficient evidence that Williams unlawfully entered the residence to obtain money from the victims.[1] The State also claims that the circuit court stated that it believed Williams had entered the victims' home "with the intent to-with purpose of committing a theft," meaning the evidence supports a finding that Williams entered the house with the intent to steal property.
The State's argument is unpersuasive. According to the felony information and the State's amendment to it, to find Williams guilty of residential burglary the court had to find that he (1) entered or remained unlawfully in a residential occupiable structure of another person (2) with the purpose of committing theft of property within the residence. But the court did not make the second required finding-instead, it found that "he went in there with the purpose of committing an offense punishable by imprisonment. And he was not invited. I think even looking at it, he went in there. Now, he did commit something because he threatened to kill them." These statements can possibly be interpreted as a finding that Williams entered the residence with the intent to threaten the victims, but it is not a finding that he entered the residence with the intent to commit theft of property. Because the State failed to prove all elements of the offense for which Williams was actually charged with committing, we must reverse and dismiss Williams's conviction for residential burglary.
We also briefly address the State's contention that the court stated that it "believed" that Williams had entered the victims' residence with the intent to commit theft. The State is referring to a discussion that took place during the hearing on the motion to reconsider:
COURT : Well, and I think that he came in with a purpose.
COUNSEL : The purpose to commit the theft of $300?
COURT : Okay. With the intent, right?
COUNSEL : With the purpose to commit the theft of $300?
COURT : With the intent to-with the purpose of committing-committing a theft, so the fact that he did not complete the theft, you're saying there was no intent?
COUNSEL : No. That's not what I'm saying.
We do not interpret this exchange as a finding by the court that Williams entered the residence with the intent to commit theft. It was merely part of an ongoing discussion between court and counsel.
III. Revocation
To revoke probation or an SIS, the State must prove the violation of at least one condition of the probation or SIS by a preponderance of the evidence. Jones v. State , 355 Ark. 630, 144 S.W.3d 254 (2004). A circuit court may revoke an SIS if it finds, by a preponderance of the evidence, that the defendant inexcusably failed to comply with a single condition of his or her suspension. See Ark. Code Ann. § 16-93-308(d) (Repl. 2016). On appellate review, the circuit court's findings will be upheld unless they are clearly against the preponderance of the evidence. Nelson v. State , 2010 Ark. App. 549, 2010 WL 2612672.
*759 Williams argues that because the SIS revocations were based on his residential-burglary conviction, the revocations must also be reversed. He asks that we reverse and remand with instructions to reinstate his suspended sentences. The State responds that his revocations should be affirmed because substantial evidence supported his conviction for residential burglary with the intent to commit theft of property.
We agree with Williams that the revocations must be reversed. The only grounds alleged in the revocation petition were that Williams had committed aggravated residential burglary, aggravated robbery, theft of property, and possession of firearms by certain persons. The circuit court dismissed the possession-of-firearms charge. Williams was acquitted on the charges of aggravated robbery and theft of property. So the only basis to support the revocations, given how the State pleaded its petition, was a finding by the circuit court that Williams had committed residential burglary with the intent to commit theft. We have already held that the circuit court did not make such a finding in the criminal portion of the trial. Because the circuit court made no oral or written findings that Williams entered the house with the intent to commit a theft inside during the revocation portion of the hearing, we have no reason to believe that the circuit court had corrected its earlier error and found that Williams had committed the crime charged. Whether using the reasonable-doubt standard or the preponderance standard, the pivotal point is that the circuit court found that Williams committed a crime with which he was not charged; and that mistake was then used to support the revocations. We reverse the revocations and remand for further proceedings consistent with our opinion. Because we reverse the revocations, we need not address Williams's argument that the circuit court committed sentencing errors in both CR-10-3907 and CR-13-1218.
Reversed and dismissed in part; reversed and remanded in part.
Gruber, C.J., and Abramson, Virden, and Whiteaker, JJ., agree.
Vaught, J., dissents.

The State also argues that Williams's argument is not preserved because he did not object when the circuit court pronounced guilt at the bench trial. Williams raised this argument after the court made its oral pronouncement but before any judgment was entered. Williams filed a written motion, the State responded to the merits of the motion, and the court held a hearing before denying the motion and later entering a written judgment. Williams preserved his point.