Cite as 2019 Ark. App. 506

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-19-247

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 30, 2019 |
| AMANDA JILL SHARP | APPELLANT | APPEAL FROM THE HOWARD COUNTY CIRCUIT COURT [NO. 31CR-16-135] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE CHARLES A. YEARGAN, JUDGE |
| | | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Amanda Jill Sharp was convicted in a bench trial of first-degree criminal mischief and criminal trespass. She was sentenced as a habitual offender to fifteen years' imprisonment, with eight of those years suspended. She was also ordered to pay restitution in the amount of $2,380.77. She argues on appeal that the trial court erred in denying her motion to dismiss. We affirm.

Appellant was arrested on September 25, 2016, at the home of Deputy John Eric Glidewell of the Howard County Sheriff's Department. According to the affidavit for the arrest warrant, appellant arrived at Glidewell's home at approximately 6:00 a.m., at a high rate of speed and parked her vehicle about ten feet from the residence. She jumped out of the vehicle and began screaming and beating on and ramming the front door. She subsequently turned around and began kicking the door. This behavior continued for nearly

five minutes even though Glidewell was telling her to stop. Glidewell was able to go outside and place appellant under arrest and call for assistance. As a result of appellant's actions, there was damage to Glidewell's front door, including damage to the door frame and glass door. The vinyl siding next to the door also had "holes" in it. The bench warrant was issued October 4.

At the January 4, 2017 hearing, appellant indicated that she intended to raise mental disease or defect as a defense. Orders for criminal responsibility and fitness to proceed examinations were filed the same day. A forensic evaluation was performed on appellant on February 10, 2017, by Dr. Julia M. Wood. She diagnosed appellant with schizoaffective disorder and methamphetamine-use disorder. Dr. Wood concluded that appellant did not lack the capacity to understand the proceedings against her or to assist effectively in her own defense. However, Dr. Wood opined that appellant lacked the capacity to appreciate the criminality of her conduct and to conform her conduct to the requirements of the law at the time of the alleged offense due to her schizoaffective disorder. She also found that appellant "was capable of the culpable mental state required as an element of the alleged offense." She concluded that appellant's substance abuse was not the "sole cause of her psychotic and mood symptoms." Additionally, she concluded that appellant was not high on drugs at the time of the offense because appellant had used drugs three days prior to the offense and had "slept well since her prior meth use." Dr. Wood's report was filed on February 15.

Appellant requested a second mental evaluation at the May 2, 2018 hearing, and orders for criminal responsibility and fitness-to-proceed examinations were filed the same

day. Dr. Wood performed another forensic evaluation on appellant on June 21. She made the same diagnosis and findings as before; however, this time the report indicated that appellant's "substance abuse ended 4 days prior to the alleged crime." The report was filed on June 28.

At the hearing held on December 5, appellant asked for a bench trial and indicated that she would be raising an affirmative defense based on her mental evaluations. A motion to dismiss based on a lack of criminal responsibility was filed the same day. A hearing on the motion took place on December 12. The court took the matter under advisement. An order denying appellant's motion was filed on December 21.

Appellant's bench trial took place on January 14, 2019. Glidewell testified that he was home asleep on September 25, 2016, when he heard loud music coming up his driveway and gravel popping. According to Glidewell, it "almost sounded like a wreck." He stated that the vehicle pulled up a few feet from his door, beside his bedroom window. He testified that all he could hear was somebody hollering. He stated that he heard a woman's voice and it sounded like she was beating on his "front metal door with something metal while screaming." He said that he told his wife to call 9-1-1 and subsequently retrieved his gun. He testified that the woman started "kicking the door causing the whole door to shake." He stated that after about five minutes, he realized it was appellant who was yelling his name and trying to get inside his house. He said that he could not understand what appellant was saying because her car radio was "turned up so loud." He testified that although he thought appellant was hitting the door with something metal, he realized that she had "turned around and was kicking it as hard as she could." He threatened to shoot

3

her if she did not move away from his door, which she did not do. He stated that at some point he put his head down near the door and saw sheetrock coming down. He testified that appellant finally sat down in the doorway, and he ran and got his handcuffs. He was able to get her to "scoot back" from the doorway so that he could go outside. Once outside, he placed appellant under arrest. He stated that he asked appellant why she was at his house, and she responded with "random off the wall stuff" such as that "the Baileys had poisoned her and people were getting their electricity." He said that appellant was moving "up and down" and that he finally got her to sit in the yard but that she rolled around, making it "obvious to [him] that she was on drugs." He testified that appellant told him several times that she was on drugs and she later said she was on methamphetamine. He stated that he had known appellant for years, but she had never come to his house. He said that appellant busted his door and damaged his siding with a flashlight that she subsequently put in the flower bed. He stated that he received an estimate in the amount of $2,394 for the damages caused by appellant. He testified that he would end up paying about $4,000 because he is buying a "better door due to this incident."

On cross-examination, Glidewell stated that he lives two houses down from appellant and that his house is located a half mile from appellant's home. He said that another deputy lives a couple of miles north of him. He testified that when appellant pulled up, he could hear hollering and that he later could hear her screaming his name. He stated that once he detained appellant, she told him that "the Baileys had poisoned her, someone named Bob, and that she saw something in the ditch." He said that appellant was "looking around,

4

looking off in the ditch, and saying 'there they are' insisting somebody was in the ditch." He testified that his door and siding were the only things damaged by appellant.

On redirect, Glidewell stated that he had worked in law enforcement for nineteen years and had encountered "probably . . . hundreds or thousands" of people under the influence of methamphetamine. According to Glidewell, appellant was displaying those same behaviors displayed by people under the influence, such as "seeing things and just looking around and couldn't stay still." He stated that appellant was "obviously on drugs." He said that if appellant had just been scared, she would have calmed down because he was there, but she just kept talking over him.

On recross, Glidewell stated that he also had a lot of dealings with people suffering from schizophrenia during his nineteen years in law enforcement. He admitted that he is no doctor but that he believes appellant's behavior was "drug induced although she might have other issues." He stated that he had spoken with appellant several times before and after the incident and that it was his belief that appellant was on drugs the night in question; however, he admitted schizophrenia can come and go in episodes.

Appellant made a motion to dismiss at the conclusion of the State's evidence, challenging the criminal intent and amount of damages. The court denied the motion and appellant put on her defense.

Dr. Wood testified that she is employed by the Division of Behavioral Health Services in Little Rock through the State of Arkansas and that she conducts psychological evaluations for the court. She stated that she has practiced for fifteen years and performs approximately 150 evaluations a year. She testified that of that number, she has found only

5

about ten people incapable of being held responsible for their crimes. She stated that she first came in contact with appellant in February 2017 when she performed a forensic evaluation on appellant. She said that the test consisted of a clinical interview, a mental-status exam, and a concrete test called the Georgia Court Competency Test. She stated that she also performed the Mississippi State Hospital Revision because it "gets more volitional information than the original test." She stated that appellant scored a ninety out of one hundred, which indicated that she understood the legal matters and charges against her and that she was capable of assisting her attorney in preparing for trial. She said that she ultimately found appellant fit to stand trial. She also testified that she evaluated appellant twice to determine if appellant was capable of conforming her actions to appreciate the criminality of her conduct. She stated that during the June 2018 examination, she performed a clinical interview to get appellant's history of mental illness, drug usage, and behavioral disorder. She testified that this information was "relevant . . . to rule certain things out" before a patient is evaluated for mental illness. She stated that she looked at the police report and also obtained appellant's version of events. She testified that appellant has an extended history of mental illness. She said that it was her opinion that on the date in question, appellant was "experiencing a psychotic state and hallucinating due to untreated schizophrenia, not drugs." She testified that she did not base her opinion on appellant's word alone, but that she looked at appellant's past medical records that included events of hallucinations and delusions at times when appellant was not using drugs. She stated that appellant claimed she had not used drugs for an extended period of time, but appellant was still experiencing delusions similar to those experienced at the time of the crime. She said

6

she had to take appellant's word that appellant was not using drugs because the State did not require drug screens. Additionally, she stated that appellant did not exhibit the signs of drug usage or withdrawal at the time of the evaluations. She further testified that in her fifteen years, she has "evaluated patients on meth. If [she] believe[s] they are actively intoxicated[,][she] give[s] them a choice of admitting it or not[,] but [she] immediately stop[s] the exam. [She] cannot examine what your mental status is if you're intoxicated because many drugs mimic the symptoms of mental illness and it confuses the picture." Dr. Wood testified that appellant could not appreciate the criminality of her conduct or conform her conduct within the bounds of the law at the time in question. She also stated that appellant acted appropriately under her mistaken belief that someone was chasing her.

On cross-examination, Dr. Wood stated that she reviewed the probable-cause affidavit because that was all she received from the State. She said that she met with appellant for an hour and a half during the examinations and that appellant claimed no drug use the three days prior to the incident and claimed to have slept since last using. She testified that it was important to know that when someone uses meth, "once you can sleep, that's the crash. If you're able to sleep, the meth has worn off." She reiterated that she did not perform a drug test on appellant. She also stated that no drug test was performed subsequent to appellant's arrest, and there was no reference to drug use in the affidavit. She testified that the only evidence she had of whether appellant was under the influence of drugs at the time of the crime was appellant's version of events. She stated that appellant did not exhibit the signs of a meth user when she evaluated appellant. She said that during her evaluation of appellant, she saw active symptoms of delusions, and it was her opinion that appellant

7

was not intoxicated at that time. Therefore, she concluded that appellant's delusions were not solely caused by drug use. She also said that appellant was not actively intoxicated at the time of the incident. However, she stated that if appellant had admitted to Glidewell she was on meth at the time of the incident, "that would influence [her] opinion."

On redirect, Dr. Wood stated that whether appellant used meth three or four days before the incident would not "have influenced [her] opinion as to whether [appellant] was under the influence of methamphetamine at the time of the alleged incident."

Sandra Joyner, the medical-records manager at Riverview Behavioral Health in Texarkana, Arkansas, testified that appellant had been diagnosed with a number of things, including schizophrenia, suicidal ideation, anxiety disorder, major depressive disorder, nightmares, and insomnia. She testified on cross-examination that in appellant's admission assessment from October 31, 2016, appellant indicated that she last used meth thirty-six days prior, which was around September 26, 2016.

Appellant renewed her motion to dismiss at the close of all of the evidence. More specifically, appellant argued that she did not possess the requisite intent for first-degree criminal mischief and that the court should consider a lesser included offense. Alternatively, she argued the affirmative defense of mental disease based upon Dr. Wood's evaluations of appellant. The court denied the motion to dismiss, finding that appellant's actions were not reckless: "Based on her actions using the flashlight, her body to try and get in the door and the kicking causing damage, I'm going to deny the motion." The court made these additional findings:

> It is the ruling of the court that the actions were caused by meth induced use. The State has shown an intent to cause damage to Officer Glidewell's home and there's a

8

dispute as to the repairs. I know there's an unintroduced request for $2,394 but I also heard it cost $4,000 with a $1,000 deductible. I'm not certain on that. But substantial damage was done and I'm reluctant to come to a figure based on testimony, but I can't give damages based on him deciding to upgrade the door. I'll come back to that. The facts are Ms. Sharp came to his home where he and his wife and two children resided on September 25, 2016 at 6:00 a.m. in the morning. Ms. Sharp came close to the house at a fast stop, blaring music, and used a [flashlight] to try and enter the home. She would not respond to request and persisted for some time. Significant damage was done and the facts show that Defendant committed criminal mischief in the first degree . . . There is no question in my mind beyond a reasonable doubt that she committed criminal mischief in the first degree and criminal trespass. As to her defense, she has the burden of proof, as far as preponderance of the evidence, to show that with two forensic evaluations, that [she] had a mental disease or defect and was unable to conform her conduct or appreciate its criminality.

The reports were not introduced as exhibits but are part of the court file. I have reviewed them multiple times before deciding to go forward today. So the burden rests with the Defendant to show that the reports should be upheld. I have some problems with the credibility of the reports. I realize this is not an exact science, but that there is a method for arriving at a decision. Dr. Wood indicated her decision was based entirely on what Ms. Sharp told her and a few other reports. My question is, was Ms. Sharp trustworthy in giving true and accurate statements to the doctor? Dr. Wood indicated she had an error in her report at one point. Also, Ms. Sharp did not tell Dr. Wood that she told Officer Glidewell she was high on meth at the time of the event. Other than a statement, there's nothing showing she was high at the time. It's clear though, that Ms. Sharp has a history of use. Ms. Joyner testified that the records show a use of meth on a different day, the day of the event. If this were a jury trial, we'd give the instruction about expert witnesses, that their opinions can be accepted or not accepted. There are a number of cases I have looked at.

. . . .

Based on all this, the Court determines that the credibility and weight given by Dr. Wood was not conclusive or persuasive to this Court. Therefore, the report is not accepted. The Court finds this is the result of Ms. Sharp's drug use and the defendant has failed to prove to a preponderance of the evidence her affirmative defense on not guilty by reason of mental disease or defect[.]

. . . .

I am not clear on the damage issue. It wasn't introduced, it was $2,300.00 or $4,000.00 and a $1,000.00 deductible. My gut feeling is that $2,000.00 is more appropriate[.]

9

. . . .

> The $1,000.00 is conclusive. I'd like to be correct on damages, and I can't unless we have a restitution hearing. I find Ms. Sharp guilty of the charges[.]

Appellant was subsequently sentenced as a habitual offender to fifteen years' imprisonment for first-degree criminal mischief. Eight of those years were suspended. She was also given credit for time served, which disposed of any imprisonment for her felony-trespassing conviction. The court reiterated that the State had met the $1,000 threshold for the charge; however, it stated that if it was determined in the restitution hearing that the amount was less, it would amend its decision.

Appellant's restitution hearing took place on January 23. Glidewell testified that appellant caused damage to his home and that he turned the claim in to his insurance company, Farm Bureau. He stated that after his $1,000 deductible, Farm Bureau cut him a check for $1,380.77. At the conclusion of the hearing, the court found that the damage amount adjusted by Farm Bureau was reasonable and ordered appellant to pay restitution in the amount of $2,380.77.[1] The sentencing order was entered on January 23, and appellant filed a notice of appeal on February 1.

Appellant argues that the trial court erred by denying her motion to dismiss. A motion to dismiss during a bench trial is a challenge to the sufficiency of the evidence.[2] In reviewing a challenge to the sufficiency of the evidence, this court determines whether the

---

[1]Appellant was ordered to pay $1,000 to Glidewell for his deductible and the remainder to Farm Bureau.

[2]Ark. R. Crim. P. 33.1 (2018).

verdict is supported by substantial evidence, direct or circumstantial.[3] Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture.[4] And we must view the evidence in the light most favorable to the verdict.[5] Additionally, the weight of the evidence and the credibility of the witnesses are matters for the factfinder, not for this court on appeal.[6]

A person commits the offense of criminal mischief in the first degree if she purposely and without legal justification destroys or causes damage to any property of another.[7] Criminal mischief in the first degree is a Class D felony if the amount of actual damage is more than $1,000 but $5,000 or less.[8]

Appellant contends that the court erred in denying her motion to dismiss because the State failed to prove that she had the requisite mental intent at the time of the crime. She further argues that her purpose for being at Glidewell's home was not to commit criminal mischief, but to "save her own life." One's intent or purpose, being a state of mind, can seldom be positively known to others.[9] Since intent ordinarily cannot be proved by direct evidence, the factfinder is allowed to draw upon his common knowledge and

---

[3]*Foster v. State*, 2015 Ark. App. 412, 467 S.W.3d 176.

[4]*Id.*

[5]*Id.*

[6]*Ridling v. State*, 360 Ark. 424, 203 S.W.3d 63 (2005).

[7]Ark. Code Ann. § 5–38–203(a)(1) (Repl. 2013).

[8]Ark. Code Ann. § 5–38–203(b)(2).

[9]*Cole v. State*, 33 Ark. App. 98, 802 S.W.2d 472 (1991).

experience to infer it from the circumstances.[10]    Because of the difficulty in ascertaining a person's intent, a presumption exists that a person intends the natural and probable consequences of his or her acts.[11]

The evidence, viewed in the light most favorable to the State, shows that appellant arrived at Glidewell's home before daybreak on September 25, 2016, with her music blaring while high on meth. She knocked a hole in Glidewell's vinyl siding with a flashlight and damaged his door by hitting and kicking it. She continued this behavior even after Glidewell threatened to shoot her if she did not stop. This evidence is sufficient to support the court's finding that appellant possessed the requisite intent for first-degree criminal mischief.

Next, appellant contends that the court erred by denying her motion to dismiss because the State failed to prove that the damage to Glidewell's property was in excess of $1,000. We do not reach this argument on appeal because appellant failed to preserve it. In a nonjury trial, a motion to dismiss shall be made at the close of all the evidence and shall state the specific grounds therefor.[12] If the defendant moves for dismissal at the conclusion of the prosecution's evidence, the motion must be renewed at the close of all the evidence.[13]

Here, appellant challenged the amount of damages following the State's case. However, she failed to challenge it in her renewed motion to dismiss at the conclusion of

---

[10]*Martinez v. State*, 2018 Ark. App. 187, 545 S.W.3d 264.

[11]*Lee v. State*, 2017 Ark. 337, 532 S.W.3d 43.

[12]Ark. R. Crim. P. 33.1(b).

[13]*Id.*

all the evidence. Because appellant failed to challenge the damage amount in her renewed motion, the issue is not preserved.

Finally, appellant contends that the court erred by denying her motion to dismiss based on her affirmative defense of mental disease. She argues that Dr. Wood's opinion that she could not appreciate the criminality of her conduct or conform her conduct within the bounds of the law at the time of the crime was enough to show that she lacked criminal responsibility. Under Arkansas Code Annotated section 5-2-312,[14] a defendant has an affirmative defense if, at the time she engaged in the charged conduct, she lacked the capacity to (1) conform her conduct to the requirements of the law or (2) appreciate the criminality of her conduct. A defendant bears the burden of proving the affirmative defense of mental disease or defect by a preponderance of the evidence.[15] The factfinder is the sole arbiter of whether or not a defendant has sustained her burden of proving the affirmative defense.[16] This court's standard of review of a verdict rejecting the defense of mental disease or defect is whether there is any substantial evidence to support the verdict.[17]

Before her trial, appellant underwent two psychological evaluations by Dr. Wood, who diagnosed appellant with schizoaffective disorder and methamphetamine-use disorder. Dr. Wood opined that appellant's schizoaffective disorder prevented her from appreciating the criminality of her conduct or to conform her conduct to the law on September 25,

---

[14](Repl. 2013).

[15]*Marcyniuk v. State*, 2010 Ark. 257, 373 S.W.3d 243.

[16]*Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007).

[17]*Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007).

13

2016. The State put forth no medical evidence to rebut Dr. Wood. However, the State did present the testimony of Glidewell who testified that appellant was high on meth when she came to his home and destroyed his property. The weight of the evidence and the credibility of the witnesses are matters for the factfinder.[18] The factfinder may believe all or part of any witness's testimony and is responsible for resolving questions of conflicting testimony and inconsistent evidence.[19] This is true even of opinion testimony offered by experts.[20]

The court, acting as the factfinder, chose to credit Glidewell's testimony that appellant was high on meth at the time of the crime over Dr. Wood's opinion that she was suffering from a mental disease. The court was entitled to believe Glidewell's testimony over appellant's expert and to decide that appellant had not proved the defense of mental disease by a preponderance of the evidence. Accordingly, we affirm appellant's conviction.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*McKay Law Firm, PLLC*, by: *Camille M. Cashion*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.

---

[18]*Ridling, supra.*

[19]*Satterfield v. State*, 2014 Ark. App. 633, 448 S.W.3d 211.

[20]*E.g., Marcyniuk, supra.*

14