Cite as 2024 Ark. App. 550

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-23-836

| | | |
|---|---|---|
| MATTHEW WAITS | | Opinion Delivered November 6, 2024 |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-22-416] |
| V. | | |
| | | HONORABLE H.G. FOSTER, JUDGE |
| STATE OF ARKANSAS | | AFFIRMED |
| | APPELLEE | |

**WENDY SCHOLTENS WOOD, Judge**

Matthew Waits appeals the sentencing order of the Faulkner County Circuit Court convicting him of residential burglary, aggravated assault of a family member, third-degree domestic battery, and criminal mischief and sentencing him to an aggregate of thirty-six years in prison. On appeal, Matthew challenges the sufficiency of the evidence to support the convictions for residential burglary and aggravated assault of a family member. We affirm.

On May 2, 2022, the State charged Matthew with residential burglary, aggravated assault of a family member, third-degree domestic battery, and criminal mischief. In addition, the State sought an enhanced sentence for aggravated assault of a family member because the offense was committed in the presence of a child. *See* Ark. Code Ann. § 5-4-702 (Supp. 2023). A bench trial took place on June 22, 2023.

Danielle Waits-Martin testified that she married Matthew in 2015. They have three children together, MC1 (born in December 2013), MC2 (born in September 2016), and

MC3 (born in October 2019). They divorced in January 2022. Danielle stated that the divorce decree provided that she received the house located at Britney Circle in Conway as her sole and separate property. The decree required her to refinance the mortgage on the house when feasible and Matthew to vacate the house by December 15, 2021. The decree awarded Danielle primary custody of the children. Matthew had visitation with the children on Mondays, Wednesdays, and every other weekend.

Danielle testified that Matthew was scheduled to have visitation with the children at her home on the evening of April 23, 2022, which was a Saturday. Danielle said that she allowed Matthew to have visits at her home because he did not have a place of his own at that time; she knew in advance when he was coming to the house; and they had communicated about the April 23 visit the day before. On the morning of April 23, Danielle received a text message from Matthew's girlfriend telling Danielle not to talk to Matthew unless it involved the children. Danielle said that she called Matthew and told him to tell his girlfriend never to speak to Danielle again or she would "tell [the girlfriend] the truth" and that Matthew got upset.

Danielle was getting the children ready for a soccer game that morning when Matthew arrived at her house, entered through the garage door, and walked into the kitchen yelling. Danielle was standing at the sink. She said she is five feet, two inches tall and weighed about 108 pounds at the time and that Matthew is six feet tall and weighed about 240 pounds. She testified that she threw her arms up and told him that he was "too mad" and needed to leave. Matthew grabbed her throat. MC1, who was eight at that time, walked into the kitchen, told

2

Matthew to leave, and punched him in the face. Matthew then grabbed MC1 and pushed him to the ground. The younger children were sitting at the kitchen table.

Danielle said that when she was trying to console MC1, Matthew got in their faces and yelled at them and punched the wall above where they were sitting. She explained that Matthew started asking where the gun was in the house. When he went to look for the gun, Danielle walked outside. Danielle said that Matthew was trying to get the younger children in the car, and she was trying to convince him to leave without the children when he pushed her about five feet across the yard. Danielle told him she would give him the gun if he left the children, which he did. Shortly thereafter, as Danielle was trying to leave to go to her parents' home, Matthew returned and asked for the bullets, which she gave him.

Danielle said that she told Matthew to leave at least twenty times; his hands seemed like they were around her throat a very long time; she could not recall breathing; she thought her children would watch her die; and Matthew let go when MC1 told him to leave. Danielle made a police report on April 25 and provided photos of her injuries and the damage to her wall. The State introduced videos from Danielle's home-security cameras depicting some of what transpired that day. On cross-examination, Danielle stated that at the time of the incident, Matthew's name was still on the deed because she had not yet refinanced the home.

The State introduced several of Matthew's jail calls though the testimony of Lieutenant Tyneshia Collins of the Faulkner County Detention Center. During one call, Matthew stated that he "choked [Danielle], in a fit of rage." The State rested, and Matthew moved for a directed verdict.

As to residential burglary, counsel argued that he could not have "entered or remained unlawfully in the occupiable structure of another" because he was still an owner of the home at the time of the alleged crime. The circuit court denied the motion, stating that the property was in the sole possession of another pursuant to a court order. As to aggravated assault, Matthew argued that there was not any purposeful conduct that would show indifference to the value of human life that would rise to the level of aggravated assault on a family member. The circuit court denied the motion, stating that choking Danielle and putting her in a position where she thought she was going to die met the requirements.

The defense rested and renewed the motions for directed verdict, which were denied. The circuit court found Matthew guilty of all the offenses and that the offenses were committed in the presence of the children. This appeal followed.

A motion to dismiss at a bench trial and a motion for a directed verdict at a jury trial are both challenges to the sufficiency of the evidence. *Foster v. State*, 2015 Ark. App. 412, at 4, 467 S.W.3d 176, 179; Ark. R. Crim. P. 33.1. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Foster*, 2015 Ark. App. 412, at 4, 467 S.W.3d at 179. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*, 467 S.W.3d at 179. Such a determination is a question of fact for the trier of fact to determine. *Rogers v. State*, 2024 Ark. App. 340, at 7, 690 S.W.3d 465, 471. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* at 7–8, 690

S.W.3d at 471. On appeal, this court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* at 8, 690 S.W.3d at 471.

Matthew first challenges the sufficiency of the evidence to support the residential-burglary conviction. A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Supp. 2023). Matthew argues that because his name was still on the deed to the home, he could not have entered or remained unlawfully on the property of another.

In Arkansas, breaking and entering has been distinguished from burglary because breaking and entering is "designed to protect property rather than people." *Barksdale v. State*, 262 Ark. 271, 273–74, 555 S.W.2d 948, 950 (1977). Moreover, treatises have addressed the protections provided by burglary statutes:

> Burglary statutes are designed to protect a possessory interest with respect to structures and conveyances and to protect the integrity of the home. The historical principle underlying the law of burglary is protection of the right of habitation. Thus, burglary is actually an offense against the possession of property and not necessarily against the ownership thereof.

> However, it has also been stated that a primary purpose of a burglary statute is to protect against the increased risk to personal safety that attends the commission of a felony in structures the defendant has no right to be, as well as to prevent the invasion of an owner's or occupant's possessory interest in a space against a person who has no right to be in the building. Thus, a burglary statute is also aimed at the danger caused by the unauthorized entry itself.

Burglary laws are primarily designed not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety. Burglary aims to punish circumstances where a trespass and unwelcomed criminal intent combine to harm the victim more than either individual crime; the whole is greater than the sum of its parts.

13 Am. Jur. 2d *Burglary* § 3, Westlaw (database updated Oct. 2024). *See also* Jens David Ohlin, *Wharton's Criminal Law* § 32:10 (16th ed. 2021) ("Only the dwelling house 'of another' can be the subject of burglary. But occupancy, rather than ownership, is the test. It is enough merely that the occupant have a possession which is 'rightful as against the burglar.' Thus, a landlord can be guilty of burglary by breaking and entering into the dwelling house of his tenant; but the tenant or occupant cannot be guilty of burglary by breaking and entering into their own dwelling house, even though the tenant or occupant intends to commit a felony therein."); 12A C.J.S. Burglary § 38, Westlaw (database updated May 2024) ("The test for determining ownership of premises for the purposes of burglary is not the legal title thereto, but the occupancy or possession thereof when the burglary is committed.").

Other jurisdictions have addressed an issue similar to the one presented here. In *Parham v. State*, 556 A.2d 280, 284 (Md. Ct. Spec. App. 1989), the appellant argued that as long as he remained married, he had a right to be in the home; therefore, the evidence was insufficient to support the burglary conviction. In affirming the burglary conviction, the Maryland court stated:

> The law of burglary was designed for the purpose of protecting the habitation, *Arnold v. State*, 7 Md. App. 1, 3, 252 A.2d 878 (1969), and thus, occupancy or possession, rather than ownership, is the test. 3 C. Torcia, *Wharton's Criminal Law* § 335 (14th ed. 1980). *See also State v. Schneider*, 36 Wash. App. 237, 673 P.2d 200, 203 (1983).

*Id.* at 284 (footnote omitted). Similarly, the Colorado Court of Appeals has addressed this issue:

> [I]n the absence of a restraining order or an order granting one party exclusive possession of the marital residence, the question whether one spouse has the sole possessory interest in it depends on whether the evidence shows that both parties had decided to live separately. Simply ordering a spouse out of the house and changing the locks does not establish this. Both parties must have understood that the possessory interest of one was being relinquished, even if such interest is relinquished begrudgingly or reluctantly. *See State v. O'Neal*, 103 Ohio App.3d 151, 658 N.E.2d 1102 (1995). *See also Commonwealth v. Robbins*, 422 Mass. 305, 662 N.E.2d 213 (1996) (factors that bear on an estranged spouse's right to enter a one-time marital residence include the marital status of the parties, the existence of any legal order against the defendant, extended periods of separation, the names on leases or documents of title, the acknowledgment by the defendant that he or she had no right to enter the premises, and the method of entry).

*People v. Hollenbeck*, 944 P.2d 537, 539 (Colo. App. 1996).

There is no dispute that Danielle was granted the sole possessory interest in the home in the divorce decree and that only she and the children lived in the home. In addition, after Matthew entered, he remained after being told to leave numerous times by Danielle and MC1. Because burglary statutes are designed to protect possession and Danielle has the sole possessory interest in the home pursuant to a court order, we hold there is substantial evidence to support Matthew's conviction for residential burglary.

For his second point on appeal, Matthew argues that the circuit court erred in denying his motion to dismiss the charge of aggravated assault on a family or household member and the enhancement for committing a crime of violence in the presence of a child because the evidence is insufficient that he impeded or prevented the respiration of a family member.

A person commits aggravated assault on a family or household member if, under circumstances manifesting extreme indifference to the value of human life, the person purposely impedes or prevents the respiration of a family or household member or the circulation of a family or household member's blood by applying pressure on the chest, throat, or neck or by blocking the nose or mouth of the family or household member. Ark. Code Ann. § 5-26-306(a)(3) (Supp 2023).

Arkansas Rule of Criminal Procedure 33.1 requires a motion for directed verdict to specify how the evidence is deficient. Ark. R. Crim. P. 33.1(c). The motion must be specific enough to apprise the circuit court of the particular basis on which the motion is made. *Still v. State*, 2022 Ark. App. 156, at 5, 643 S.W.3d 830, 833. Our law is clear that a party is bound by the scope and nature of his directed-verdict motion and cannot change the grounds on appeal. *Id.* at 5–6, 643 S.W.3d at 833.

In his motion for directed verdict, Matthew's counsel argued only that "he did not purposely engage in any conduct that would show indifference to the value of human life that would make this rise to the level of being an aggravated assault on a family or household member." Because his motion failed to challenge the State's evidence of whether he impeded or prevented the respiration of a family member, this argument is not preserved for our review. In addition, Matthew failed to mention the sentence enhancement in the motion. Accordingly, we affirm.

Affirmed.

KLAPPENBACH and THYER, JJ., agree.

*The Cannon Law Firm, PLC*, by: *David R. Cannon*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.