Cite as 2023 Ark. App. 234

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-22-723

| | | |
|---|---|---|
| TEVIN RANDLE | | Opinion Delivered April 19, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE PHILLIPS |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 54CR-17-161] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE CHALK MITCHELL, |
| | | JUDGE |
| | | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

The Phillips County Circuit Court revoked the probation of appellant Tevin Randle and sentenced him to ten years' imprisonment. On appeal, Randle argues that the trial court erred in revoking his probation because the State failed to prove that he kidnapped China Kirkland. He also challenges the admissibility of evidence of her prior inconsistent statements. We affirm.

In 2018, Randle pleaded guilty to one count each of first-degree battery and unlawful possession of a firearm in case No. 54CR-17-161. The court sentenced him to concurrent terms of five years' imprisonment followed by a sixty-month period of suspended imposition of sentence upon his release. The terms and conditions of his sentences required, in part, that he not commit any new offenses punishable by imprisonment. On January 21, 2022,

the State filed a petition to revoke Randle's suspended sentence, alleging he committed Class Y felony kidnapping on October 21, 2021.

While Randle's kidnapping case was pending, a revocation hearing was held and established the following surrounding China Kirkland's kidnapping and stabbing. Brian Holloway, a Phillips County sheriff, received a report from another law enforcement agency that Kirkland had been repeatedly stabbed in Mississippi after being taken from a residence located in Phillips County. He was advised that Randle's involvement in Kirkland's kidnapping was based on a statement she gave, and he arrested several in connection to the incident.

Kirkland testified that the night of the incident, she and her boyfriend, Derrick Williams, were at his house playing video games with Courtney Burkes. Williams lived with his brother, Randle. Kirkland testified that she overheard Burkes tell Randle over speaker phone that two pounds of marijuana was missing from the house. While her testimony differed at trial, Kirkland acknowledged that she previously had informed law enforcement that Randle and Kyle McIntosh were driving back from Little Rock and that Randle instructed Burkes to "keep everyone there" and that no one could leave the residence until he and McIntosh returned.

The two arrived a few hours later. McIntosh entered the residence first, followed by Randle, who, according to Kirkland's testimony, immediately "closed the door and locked it[.]" She recalled that Burkes stood guard with a gun, and McIntosh, with knife in hand, began questioning Kirkland about the missing marijuana. McIntosh then instructed Patrick

Davis, another person at the house, to go to the store to get duct tape and trash bags because he was "going to kill [Kirkland]." Kirkland testified that Randle remained at the residence. Upon Davis's return, McIntosh bound Kirkland with duct tape and stuffed socks in her mouth. Kirkland was then put in the trunk of Randle's car, though Randle remained at the residence. She was taken to Mississippi, where McIntosh and Davis dragged her out of the trunk and into the woods. Davis stabbed her thirty-five times. Kirkland eventually played dead, and they left her.

At the hearing, Kirkland admitted that her testimony was not consistent with what she originally told the police. The State moved to introduce Kirkland's recorded prior inconsistent statement. Randle objected because he did not have a copy of the recording, but the objection was overruled. At the hearing, Kirkland testified that Randle called her a "bitch" and a "whore" but that he never had a firearm and never kidnapped her or kept her from leaving the house. She also testified that he was not able to help or do anything to stop McIntosh because he was being kidnapped, too, and that he was not able to call for help because McIntosh and Davis took everyone's phones.

Randle also took the stand and denied any participation in the kidnapping. On cross-examination, he admitted that he had kidnapped someone in 2017, and when he was interviewed about Kirkland's kidnapping, he had lied to police when he told them that she had not been at his residence.

In granting the State's revocation petition, the court found in part:

[Randle] allowed the use of his car. He's sitting at the table. I think the testimony came out on the statement what he was doing continuing to make money, selling drugs. I think that came out in the video. I'm going to allow the video. I'm going to give weight to that versus the testimony. I'm still trying to figure out what's going on with this case. I know I would be afraid to come and testify. I think she's told her story, but the details somehow come and go. think the best version of it was on the video that I watched today.

I think this defendant is just as guilty–part of this and cause though he didn't do it himself, but could have done far more to stop it. I think this is actually a tragedy. I think it's only a miracle that this young lady survived.

To revoke probation or a suspended sentence, the burden is on the State to prove the violation of a condition of the probation or suspended sentence by a preponderance of the evidence. *Dunlap v. State*, 2022 Ark. App. 202, at 4. The State need only prove one violation of the terms and conditions of probation to sustain a revocation. *Id.* On appellate review, the circuit court's findings will be upheld unless they are clearly against the preponderance of the evidence. *Id.* Because the burdens are different, evidence that is insufficient for a criminal conviction may be sufficient for revocation of probation or suspended sentence. *Id.* Furthermore, because the determination of a preponderance of the evidence turns on questions of credibility and weight to be given to the testimony, we defer to the circuit court's superior position. *Id.*

Randle was charged with kidnapping pursuant to Ark. Code Ann. § 5-11-102 (Repl. 2013), which provides that a person commits the offense if, "without consent, the person restrains another person so as to interfere substantially with the other person's liberty with the purpose of inflicting physical injury upon the other person." A person acts purposely

with respect to his conduct or a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause that result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

In defining kidnapping, the Criminal Code speaks in terms of restraint rather than removal. *Turner v. State*, 2018 Ark. App. 5, at 5, 538 S.W.3d 227, 233–34. Hence, the statute reaches a greater variety of conduct because restraint can be accomplished without removal. *Id.* "Restraint without consent" includes restraint by physical force, threat, or deception. Ark. Code Ann. § 5-11-101(3)(A) (Repl. 2013). Factors to be considered in determining whether a kidnapping conviction is supportable include whether the restraint (1) prevented the victim from summoning assistance; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. *Singleton-Harris v. State*, 2014 Ark. App. 436, at 4–5, 439 S.W.3d 720, 723.

On appeal, Randle argues there was no evidence that he did anything to restrain Kirkland for any purpose. He claims that, while Kirkland's testimony was sufficient to prove that she was kidnapped and stabbed, her testimony made clear that Randle was not involved in either act. We disagree.

The evidence established that Randle instructed Burkes to keep everyone at the house while he transported McIntosh to his house, knowing that McIntosh was looking to harm someone for the missing marijuana. When he arrived at the house, Randle locked the door, thwarting Kirkland's ability to leave. The event transpired at Randle's residence, and Randle's car was used to transport Kirkland to Mississippi where she was stabbed. Kirkland's statement right after the incident was that Williams was the only person who tried to stop

5

anything from happening. While there was testimony that Randle tried to prevent the kidnapping, it was up to the court to weigh the evidence; this court defers to the circuit court's superior position in determining the credibility of the witnesses. *Haley v. State*, 96 Ark. App. 256, 259, 240 S.W.3d 615, 618 (2006). Moreover, Randle originally told officers that Kirkland was not at his house the night of the incident. This court has held that lying about a crime can indicate a consciousness of guilt. *Stearns v. State*, 2017 Ark. App. 472, at 5, 529 S.W.3d 654, 657.

Randle also challenges the court's consideration of Kirkland's prior inconsistent statement. He contends it was improperly admitted because it was unsworn and was therefore admissible for impeachment purposes only and not as substantive evidence. This argument is not preserved.

To preserve an argument for appeal, it is well established there must be an objection made to the circuit court that is sufficient to apprise of the particular error alleged, and appellants cannot change the grounds of their objection or the nature of such arguments on appeal. *Eliot v. State*, 342 Ark. 237, 242, 27 S.W.3d 432, 435–436 (2000). Here, Randle objected to the introduction of Kirkland's recorded statements to police only on the basis of the State's failure to provide the defense a copy of the statements; he did not object to the use of the statements as substantive evidence. Additionally, the rules of evidence are not strictly applicable in revocation cases. *McKinney v. State*, 2020 Ark. App. 473, at 4, 612 S.W.3d 172, 175.

Accordingly, we hold that the trial court's finding of a probation violation based on Kirkland's kidnapping was not clearly against the preponderance of the evidence.

Affirmed.

HARRISON, C.J., and BARRETT, J., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.