Cite as 2024 Ark. App. 223

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-23-509

| | | |
|---|---|---|
| EUGENE HARE | | Opinion Delivered April 3, 2024 |
| | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. 16JCR-21-998] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CHRISTOPHER THYER, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**RITA W. GRUBER, Judge**

Eugene Hare appeals the April 5, 2023 Craighead County Circuit Court order revoking his suspended imposition of sentence (SIS). Hare contends that the circuit court erred in revoking his SIS because (1) the State failed to prove that the pills seized were a contraband substance; and (2) no evidence was presented that Hare possessed the contraband. We affirm.

## I. *Factual and Procedural History*

Hare was charged via information on October 21, 2021, with three separate counts of felony possession of a controlled substance with purpose to deliver and felony possession of a controlled substance. Hare was charged as a habitual offender, having five prior felony convictions—all drug related. On December 16, 2021, Hare pled guilty to one count of felony possession of a controlled substance with purpose to deliver, and an order was filed

sentencing him to sixty months' SIS; imposing various costs, fines, and fees; and nolle prossing the remaining three counts. That same day, Hare signed the conditions of his SIS, which required in relevant part that he not commit a criminal offense punishable by imprisonment and prohibited him from using, selling, distributing, or possessing any controlled substance, save for legitimately prescribed medications.

On October 25, 2022, the State filed a petition to revoke (PTR) Hare's SIS. The PTR alleged that Hare had violated his SIS by failing to live a law-abiding life, to be of good behavior, and to not violate any federal, state, or municipal laws when on September 15, 2022, he was found to be in possession of fentanyl, MDMA, Xanax, clonazepam, and marijuana, all with a purpose to deliver, as well as in possession of drug paraphernalia.[1]

Thereafter, a revocation hearing was held. At the hearing, the circuit court took judicial notice of the terms and conditions of Hare's SIS, the underlying sentencing order, and the PTR. The only witness to testify was Michael Steele, an investigator with the Jonesboro Police Department (JPD).

Steele testified that on September 15, 2022, Steele and four other JPD investigators saw Hare leave a building, appearing to have locked an apartment door. Steele and the other investigators made contact with Hare, knowing he was "on felony paper." Steele searched Hare, locating a key on his person. Steele took the key back to the residence from which

---

[1]There appears to be a scrivener's error in the PTR, insomuch as there are no further references in the record regarding the possession of drug paraphernalia, Xanax, clonazepam, or marijuana.

2

Steele had seen Hare exit, and the key unlocked the residence's door. Steele searched the residence and found "an attic access" in the bathroom. Within the attic, Steele found a large glass container wrapped in black tape. Inside the container was a rolled-up sock containing approximately 151 pills. Steele testified that while he is not a certified drug analyst and does not work for the Arkansas State Crime Laboratory, he had received extensive training in narcotics-related investigations. Based on that training as well as his experience, Steele believed the pills to be ecstasy because they were multicolored with a figure stamped on them, but no numbers or letters, which is usually done to identify "MDMA, ecstasy-style" pills by their maker. The pills were then seized and field tested.

Hare's counsel objected to Steele's testifying about the field-testing results, arguing that such testimony was inadmissible. The State responded that the testimony went to the weight of the evidence, and while such testimony might be impermissible under a guilty-beyond-a-reasonable-doubt standard, it was permissible under the lower preponderance-of-the-evidence standard in a revocation proceeding. The circuit court ruled that it would permit Steele to testify and determine later whether the testimony should be disregarded with respect to the ultimate decision.

Steele resumed his testimony. He stated that the pills field tested positive for fentanyl and that Hare was then arrested and taken into custody. Steele explained that it is not uncommon for "man-made pills" such as ecstasy to be pressed or cut with something else, such as fentanyl. Before leaving the scene, a female arrived. She and Hare argued because she wanted to get her "stuff out," and Hare told her he did not want her "in his residence"

and requested his key back. That interaction, along with Hare's having a key to the residence and locking it upon leaving, as well as the presence of male clothing inside the residence confirmed for Steele that Hare lived in the residence where the contraband was located. Steele was asked if he was aware that the address of the residence at which the contraband was located was not the address to which Hare was paroled; Steele responded that he was not.

Both parties gave closing arguments. Hare argued that it was uncertain what the pills were, and his possession of a key to the residence did not mean that he knew the pills were in the attic or that he had ever possessed them. The State responded that the key was found on Hare, who had been being surveilled and seen leaving the residence shortly before the pills were found. The State emphasized that Hare has an extensive criminal history, was on parole for similar type charges, and none of Steele's testimony had been negated. The State argued further that how the pills were packaged and where they were found—rolled up in a sock and placed in an attic—coupled with the field test and Steele's expertise was sufficient to meet the State's burden of proof for the PTR allegations.

Hare's counsel argued that the field test did not meet the scientific-certainty and reliability requirements mandated by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The circuit court noted this was an evidentiary objection, and the rules of evidence did not apply in a revocation hearing. The court then ruled that the field-test testimony was admitted, and Hare's objection went to the weight of the evidence rather than its admissibility. The court further ruled that it was more likely than not that the pills were

a controlled substance due to where they were found and the field-test results. The court then found by a preponderance of the evidence that Hare had violated the terms and conditions of his SIS. On April 5, 2023, pursuant to the revocation of Hare's SIS, an order was entered sentencing Hare to 120 months' imprisonment in the ADC. This timely appeal followed.

## II. *Standard of Review*

In revocation proceedings, the circuit court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of SIS. *Webb v. State*, 2015 Ark. App. 257, at 6, 460 S.W.3d 820, 824 (citing Ark. Code Ann. § 16-93-308(d)). Evidence that may be insufficient to convict can be sufficient to revoke due to the State's lower burden of proof in a revocation proceeding. *Id.* A circuit court's finding in revocation proceedings will not be reversed on appeal unless it is clearly against the preponderance of the evidence. *Id.* Because the preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the superior position of the circuit court to decide these matters. *Id.*

## III. *Discussion*

### A. The Contraband

Hare first contends that the State failed to produce a crime-lab report or witness to verify that the pills seized were a contraband substance. Hare argues that this failure was a violation of his Sixth Amendment right to confront adverse witnesses. The State responds that to the extent that Hare's argument relies on his due-process right to confront adverse

5

witnesses, he failed to present that argument to the circuit court and is barred from raising it for the first time on appeal.

The State is correct. Hare's argument to the circuit court was that Steele's testimony regarding the results of the field testing was inadmissible. Hare did not argue that the lack of a crime-lab report was a violation of his Sixth Amendment constitutional right to confront adverse witnesses, and we will not address new or different arguments raised for the first time on appeal. *See, e.g.*, *Foster v. State*, 2023 Ark. App. 157, at 6, 661 S.W.3d 743, 747 (appellate courts will not address arguments raised for the first time on appeal); *see also Randle v. State*, 2023 Ark. App. 234, at 6, 664 S.W.3d 476, 480 (appellants cannot change the grounds for their objection or the nature of such arguments on appeal).

Even if the issue was preserved, Hare's argument was an evidentiary one, not a constitutional one, and the rules of evidence are not strictly applicable in revocation cases. *See* Ark. R. Evid. 1101(b)(3); *Randle*, 2023 Ark. App. 234, at 6, 664 S.W.3d at 480. To the extent that Hare takes issue with the way the pills were determined to be contraband, i.e., through Steele's testimony and not a crime-lab report, Steele was cross-examined by Hare's counsel, and the argument goes to the weight and credibility of Steele's testimony, which is a determination deferred to the circuit court. *See Webb, supra*. Moreover, a positive field test is sufficient evidence to support a revocation for possession of a controlled substance. *See, e.g., Crouse v. State*, 2012 Ark. 442, at 2–3. Thus, we are unpersuaded by Hare's first point on appeal.

B. Possession

6

Hare next contends that there was no evidence that he possessed the contraband. He argues that the State failed to show that he constructively possessed the contraband, which was discovered in a jointly occupied premises.[2] The State responds that a preponderance of the evidence supports the revocation, even if Hare constructively possessed the contraband in a jointly occupied premises.

### 1. *Constructive possession*

In drug cases, it is not necessary that the State prove literal, physical possession of the contraband; possession of contraband can be proved by constructive possession, which is the control or right to control the contraband. *Szczerba v. State*, 2017 Ark. App. 27, at 6–7, 511 S.W.3d 360, 365. Constructive possession may be established by circumstantial evidence. *Id.* at 7, 511 S.W.3d at 365. Constructive possession can be inferred where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Id.* The improbable nature of the accused's explanations can be considered a sufficient linking factor to support constructive possession. *Terry v. State*, 2018 Ark. App. 435, at 5, 559 S.W.3d 301, 304.

In support of his constructive-possession argument, Hare asserts that the premises he was seen leaving is not the address he had on file with the parole office and that another person arrived on scene who also had a key to the premises. The State responds that there

---

[2]The parties conflate constructive possession with joint occupancy, which, despite having similar elements, are two different doctrines.

7

were sufficient linking factors to find that Hare constructively possessed the contraband. We agree.

Hare locked the apartment with the key found in his possession, which was then used to enter the apartment. No one other than Hare was seen exiting the apartment; no one else was in the apartment when it was searched; and male clothing was in the apartment. The contraband was found in a rolled-up sock in a glass container in the attic, a location unlikely to be accessed by anyone other than the occupant. *See Dye v. State*, 2018 Ark. App. 545, at 7, 564 S.W.3d 299, 304 (affirming a conviction for possession of methamphetamine based in part on the appellant's possession of a key that opened the front door); *Szczerba v. State*, 2017 Ark. App. 27, at 8–9, 511 S.W.3d at 365–66 (a criminal-sufficiency appeal involving the constructive possession of contraband where this court held that there was substantial evidence that the appellant had knowledge of the contraband based in part on appellant's possession of a key to a locked file cabinet in which some of the contraband was located).

Hare demonstrated his dominion over the apartment when he denied the female entry and demanded return of a key. The only "evidence" at the hearing that the apartment was not Hare's consisted of Steele's testimony that he was not aware that the apartment address was not the address to which Hare had been paroled. Steele's testimony evidences a lack of knowledge regarding Hare's parole address, which is not the same as affirmative knowledge that Hare did not reside at the apartment. Thus, we are unpersuaded by Hare's constructive-possession argument.

2. *Joint occupancy*

8

Hare also argues that the apartment where the contraband was located was jointly occupied. In joint-occupancy cases, the State must prove two elements: (1) that the accused exercised care, control, or management over the contraband and (2) that the accused knew the matter possessed was contraband. *Szczerba*, 2017 Ark. App. 27, at 7, 511 S.W.3d at 365. When there is joint occupancy of the premises where the contraband is found, some additional factor must be present to link the accused to the contraband. *Id.*, 511 S.W.3d at 365. This control and knowledge can be inferred from circumstances, such as the proximity of the contraband to the accused, whether the contraband was in plain view, and ownership of the property where the contraband is found. *Id.* Control can also be inferred from the "accused's suspicious behavior, . . . the improbability that anyone other than the appellant placed the contraband in the location, . . . and the improbable nature of the appellant's explanations." *Block v. State*, 2015 Ark. App. 83, at 6, 455 S.W.3d 336, 340 (internal citations omitted).

In support of his joint-occupancy argument, Hare points out that another person arrived on scene who also had a key to the apartment. The State responds that as a threshold matter, Hare did not make a joint-occupancy argument to the circuit court; thus, it is not evident that the residence in which the contraband was discovered was, in fact, jointly occupied. The State is correct that Hare did not raise a joint-occupancy argument to the circuit court. While generally this court will not address arguments raised for the first time on appeal, this argument challenges the sufficiency of the evidence, which may be raised for the first time on appeal. *Myers v. State*, 2014 Ark. App. 720, at 3, 451 S.W.3d 588, 590.

The State further responds that Hare offered no evidence that the woman who arrived on scene—ostensibly with a key to the apartment—actually occupied the premises. The State argues that Hare offered nothing to demonstrate that the woman's mere access to Hare's apartment established joint occupancy or implicated her in the possession of the contraband. The State further argues that this court should reject Hare's arguments because they are unsupported by convincing argument or sufficient citation to legal authority.

The State must prove only that Hare had knowledge regarding the contraband if the premises was, in fact, jointly occupied, which Hare failed to establish. *See Foster v. State*, 2015 Ark. App. 412, at 5, 467 S.W.3d 176, 180 (appellant's assertion that the State was required to prove he knew the matter possessed was contraband was mistaken because the State is required to do so only in joint-occupancy cases, which was not the case where the sole occupant of the vehicle was appellant). Again, Hare was the only person seen leaving the apartment; no one else was found within the apartment; and male clothing was found in the apartment. The fact that someone other than Hare may have had access to the premises does not establish that the premises was jointly occupied. *See, e.g.*, *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002) (supreme court held that a single occupant—the appellant—in a borrowed car or car owned by another was only subject to the general inquiry for constructive possession and was not entitled to the benefit of the increased inquiry afforded those in a joint-occupancy situation). Thus, we are unpersuaded by Hare's joint-occupancy argument.

The evidence here was sufficient to demonstrate that it was more likely than not that the pills located were contraband, and Hare constructively possessed the contraband in a

10

premises that was not jointly occupied. Accordingly, we hold that the circuit court did not err in revoking Hare's SIS.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Terry Goodwin-Jones*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.