SLIP OPINION

Cite as 2015 Ark. App. 83

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–13–1030

| | |
|---|---|
| JOHN EVERETT BLOCK, JR.<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** February 11, 2015<br><br>APPEAL FROM THE HEMPSTEAD COUNTY CIRCUIT COURT<br>[No. 29CR-13-65]<br><br>HONORABLE RANDY WRIGHT, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant John Everett Block appeals his convictions of possession of marijuana and simultaneous possession of drugs and firearms. He challenges whether the State presented sufficient evidence of his possession of marijuana to support both convictions. We affirm.

Block was tried by a jury in the Circuit Court of Hempstead County over two days in July 2013. John Weaver, an officer with the Hope Police Department, testified that on December 22, 2012, at approximately 7:00 p.m., he responded to a dispatch call reporting shots fired on North Walker Street in Hope. While proceeding toward North Walker Street, he received another call saying that someone needed assistance on Dairy Street. He was passing Dairy Street at the time and was able to reach the location near the intersection of Dairy Street and Graham Street less than a minute after the call. Weaver testified that upon his arrival at the location he observed a vehicle in a ditch with several bullet holes in the windshield. He initially did not see any people at the scene. He testified that after exiting his patrol car and approaching the scene, a man he

later identified as Block came out from behind a shed to Weaver's left. Weaver testified that the shed is approximately fifteen to twenty yards from the road. There were no houses or other buildings around it.

Weaver testified that within a minute of his arrival at the scene, two other officers arrived. They began looking for evidence and made contact with Block. Weaver testified that Block initially stated that someone had shot at him several times and that Block had taken off running. Sergeant Daniel Oller testified that Block later said he had been traveling southbound on Graham Street when an off-white car began driving erratically, threatening to hit him. He said he activated his car's horn, and the off-white car stopped on Hickory Street. Block told Oller that someone got out of the car, slipped down into a ditch, fired one shot in the air, then stood up and began firing at Block's car. Oller testified that Block said he backed his car down Graham Street until it stopped in the ditch. When Oller told Block about his observation that the evidence at the scene indicated that some of the shots were fired from inside the car,[1] Block admitted that he had a firearm and had returned fire. He indicated that he had thrown the gun in the bushes near a fence row directly across the street from the shed.

The officers testified that they then began searching for the gun. When they could not locate it in the bushes near the fence, Oller asked Block if he was sure he had thrown the gun there. The officers began expanding their search. Oller testified that Block then began to act nervous. Block made spontaneous, unprovoked utterances about how he was going to spend Christmas in jail. Oller testified that Block's behavior made Oller nervous, especially since the

---

[1]Oller testified that an inspection of the windshield on Block's car revealed that some bullet holes bent outward while others bent inward. He also testified that six spent forty-caliber shell casings were found in the car.

SLIP OPINION

officers had not recovered the firearm. For the officers' safety, Oller placed Block in handcuffs and performed a *Terry* frisk to check for weapons. During the frisk, Oller felt a large bulge in Block's clothing, which Block stated was approximately seventeen hundred dollars in cash.

The officers expanded their search for the weapon to the area behind the shed where Weaver had first observed Block. Oller testified that he discovered a white plastic trashbag behind the shed. Oller testified that, although it had been raining earlier that day and the ground was wet and muddy, the plastic bag was clean and dry. He testified that leaves near the bag held standing water, but there was no water on the bag. Inside the bag, he found seven Ziploc bags filled with a leafy green substance that was later confirmed to be marijuana. The officers collected the evidence and placed Block under arrest. Based upon crime-lab testing, the parties stipulated at trial that the trashbag contained a total of 6.96 pounds of marijuana.

Detective Andrew Watson testified that he interviewed Block after his arrest. A recording of this interview was played for the jury. During the interview, Watson repeatedly implied that the shooting was motivated by Block's possession of a large amount of marijuana, suggesting that a man named Willie Pree had attempted to rob Block of the drugs and money he was carrying. Block never admitted to possessing any drugs.

At the close of the State's case, Block's attorney moved for a directed verdict, arguing that the State had failed to present sufficient evidence to prove that Block possessed or had control of the marijuana discovered behind the shed. He also argued that there was no evidence that Block possessed a handgun.[2] The court denied the motion.

---

On appeal, Block abandons the argument that the State failed to present sufficient evidence to support a finding that he possessed a firearm.

SLIP OPINION

The defense recalled Sergeant Oller, who testified that the money discovered on Block was not initially confiscated. He stated that Block gave his personal belongings, including the money, to his mother, Gwendolyn Brooks, who appeared at the scene. After Block was arrested, the officers recovered the money from Brooks. Brooks testified that she had given Block some money a week or two before the shooting. She stated that the money had come from the sale of cows she owned.

Whitney Coleman testified that, while working at a store in Hope earlier on the day of the shooting, Willie Pree came in looking for Block. She testified that Pree was with three men she did not recognize, driving a gold Malibu. Willie Pree testified that earlier on the day of the shooting he had been with acquaintances from Little Rock who had a large quantity of drugs they wanted to sell to Block. He testified that he did not know if these men ever made contact with Block that day or whether they sold drugs to Block.

At the close of all the evidence, Block's attorney renewed his motion for directed verdict. The court again denied the motion. The jury convicted Block of possession of a controlled substance with intent to deliver and simultaneous possession of drugs and firearms. Block filed a timely notice of appeal.

An appeal from the denial of a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Bangs v. State*, 338 Ark. 515, 518, 998 S.W.2d 738, 741 (1999). We will affirm the denial of a motion for directed verdict if substantial evidence, either direct or circumstantial, supports the conviction. *Harmon v. State*, 340 Ark. 18, 22, 8 S.W.3d 472, 474 (2000). Substantial evidence is evidence which would compel a conclusion one way or the other

with reasonable certainty, without relying upon mere speculation or conjecture. *Id.*, 8 S.W.3d at 474. We view the evidence in the light most favorable to the State and consider only evidence supporting the verdict. *Butler v. State*, 2009 Ark. App. 695, at 5, 371 S.W.3d 699, 702. Inconsistent evidence does not render proof insufficient. *Williams v. State*, 351 Ark. 215, 222–223, 91 S.W.3d 54, 58–59 (2002). Circumstantial evidence may provide the basis for a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable explanation of the crime. *Harris v. State*, 2014 Ark. App. 448, at 3, 439 S.W.3d 715, 717. The question of whether the circumstantial evidence would support any other theory is for the jury to decide. *Ross v. State*, 346 Ark. App. 225, 230, 57 S.W.3d 152, 156 (2001).

Block was convicted of possession of a controlled substance with intent to deliver under Arkansas Code Annotated section 5-64-436(b)(3) (Supp. 2011) and simultaneous possession of drugs and firearms under Arkansas Code Annotated section 5-74-106 (Supp. 2011). Block's sole argument on appeal, as to both convictions, is that the State failed to produce sufficient evidence to support a finding that he possessed the marijuana discovered behind the shed.

When possession of contraband is an element of the offense, the State is not required to prove literal physical possession. *Kilpatrick v. State*, 322 Ark. 728, 733, 912 S.W.2d 917, 920 (1995). We look to whether the contraband was located in a place that was under the dominion and control of the accused. *Holt v. State*, 2009 Ark. 482, 348 S.W.3d 562. Constructive possession can be implied where the contraband was found in a place immediately and exclusively accessible to the accused and subject to his control. *Polk v. State*, 348 Ark. 446, 453, 73 S.W.3d 609, 614 (2002). Constructive possession may be implied when the contraband is in joint control of the

defendant and another person. *Id.* To prove constructive possession, the State must establish that the defendant exercised "care, control, and management over the contraband." *Harrison v. State*, 371 Ark. 474, 482, 268 S.W.3d 324, 331 (2007). There must be some evidence that the accused had knowledge of the presence of the contraband. *Alexander v. State*, 2009 Ark. App. 374. The defendant's control over and knowledge of the contraband can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, the ownership of the property where the contraband is found, and the accused's suspicious behavior. *Loggins v. State,* 2010 Ark. 414, at 5, 372 S.W.3d 785, 790. Location of the contraband in close proximity to the defendant has been held to be a sufficient linking factor to support a constructive possession conviction. *See McCastle v. State*, 2012 Ark. App. 162, at 4–5, 392 S.W.3d 369, 372. The Arkansas Supreme Court has also considered the improbability that anyone other than the defendant placed the contraband in the location and the improbable nature of the defendant's explanations. *Kilpatrick*, 322 Ark. at 733–34, 912 S.W.2d at 920; *Mings v. State*, 318 Ark. 201, 207–09, 884 S.W.2d 596, 600–01 (1994).

In *Garner v. State*, 355 Ark. 82, 131 S.W.3d 734 (2003), and *Hodge v. State,* 303 Ark. 375, 797 S.W.2d 432 (1990), our supreme court addressed constructive possession of contraband discovered in an area entirely outside the defendant's control and exposed to the public at large. The court reversed both convictions, holding that the State must provide more definite factors linking the defendant to the contraband than would be sufficient had the narcotics been discovered in a privately-controlled area. *Garner*, 355 Ark. at 89–90, 131 S.W.3d at 738–39; *Hodge*, 303 Ark. at 377–78, 797 S.W.2d at 434. In both *Garner* and *Hodge*, the drugs were found

along the side of heavily-traveled public roads, within a short distance from the roadway. *Garner,* 355 Ark. at 89–90, 131 S.W.3d at 738–39*; Hodge,* 303 Ark. at 377–78, 797 S.W.2d at 434. The Court noted in both cases that the location of the drugs made it feasible that they could have been tossed from any passing car. *Garner,* 355 Ark. at 89–90, 131 S.W.3d at 738–39*; Hodge,* 303 Ark. at 377–78, 797 S.W.2d at 434. In both *Garner* and *Hodge,* the Court noted that neither drugs nor large sums of money were found on the defendants, and the defendants were not observed in close physical proximity to the drugs. *Garner,* 355 Ark. at 89–90, 131 S.W.3d at 738–39*; Hodge,* 303 Ark. at 377–78, 797 S.W.2d at 434.

Unlike in *Garner* and *Hodge,* substantial evidence supports Block's convictions. Block was observed emerging from behind the shed, in close proximity to the drugs. The shed was approximately fifteen to twenty feet from the road, and the drugs were located behind the shed, eliminating the possibility that the drugs could have been tossed from a passing car. Additionally, the officers testified that the bag was clean and dry despite the rain, indicating that it had been placed behind the shed immediately before it was discovered. The officers testified that Block began acting very nervous and making spontaneous statements about spending Christmas in jail when it became obvious that the officers were going to search behind the shed. Suspicious or nervous behavior has been recognized as a linking factor in constructive-possession cases. *Loggins,* 2010 Ark. 414, at 5, 372 S.W.3d at 790. Unlike in *Garner* and *Hodge,* Block had a large amount of cash on him when he was arrested. Finally, Block admitted to having a gun, and previous cases have recognized that there is a nefarious relationship between possession of guns and drugs. *Kilpatrick,* 322 Ark. at 734, 912 S.W.2d at 920 ("This court has recognized that

firearms are considered a tool of the narcotics dealer's trade."); *Walker v. State*, 301 Ark. 218, 221, 783 S.W.2d 44, 46 (1990). We hold that the evidence, taken together, sufficiently links Block to the marijuana discovered behind the shed, and substantial evidence supports both convictions.

Affirmed.

WHITEAKER and HOOFMAN, JJ., agree.

*Scholl Law Firm, P.L.L.C.*, by: *Scott A. Scholl*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.