Cite as 2025 Ark. App. 81

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-24-287

| | | | |
|---|---|---|---|
| JOHNELL GRAHAM | | | |
| | APPELLANT | | Opinion Delivered: February 12, 2025 |
| V. | | | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 01SCR-23-95] |
| STATE OF ARKANSAS | | | |
| | APPELLEE | | |
| | | | HONORABLE DONNA GALLOWAY, JUDGE |
| | | | AFFIRMED |

**CASEY R. TUCKER, Judge**

An Arkansas County Circuit Court found Appellant Johnell Graham ("Graham") guilty of two counts of possession of a firearm by certain persons––in violation of Ark. Code Ann. § 5-73-103 (Repl. 2024). In an amended sentencing order filed on February 28, 2024, Graham received a sentence of five years for each count to run consecutively for a total of ten years in the Arkansas Division of Correction. Graham's sole argument on appeal is that there was insufficient evidence to prove that he was in possession of firearms. We affirm.

The evidence presented at the trial was that the incident resulting in Graham's conviction occurred on May 10, 2023, at 160 River Road (the "Residence"). Alicia Baker, the sole owner of the Residence, testified that she arrived at the Residence at 8:00 a.m. after finishing her night shift at work on May 10, 2023. Upon arriving at the Residence, she saw her ex-husband, Jeffrey Nathaniel Morgan, who had been living with her, along with a few other people. Baker, a convicted felon, testified that she went to the sheriff's office to request

an eviction notice for Morgan and to have law enforcement remove the other visitors--specifically, Graham. She reported seeing a gun before she left the Residence.

Baker then testified that she thought the gun was a Ruger that she inherited from her uncle a long time ago. She testified that prior to this sighting on the morning of May 10, 2023, she had not seen the gun for almost a year.

Deputy Stokes testified that when Baker first came to the sheriff's office, she told him and other deputies that she wanted Morgan along with any other individuals removed from her home. She mentioned seeing drug paraphernalia, which alarmed her. Deputy Stokes testified that when he arrived at the Residence, he found Deputy Leech outside with two or three individuals, including Morgan, who said no one was inside. Deputy Stokes wore a body camera, and the footage and the headphones were introduced as exhibits.

Six minutes of the body-camera video (including audio) were played for the jury. The video was paused at certain points so that the State's counsel could ask Deputy Stokes questions. During a pause, Deputy Stokes testified that after he and Deputy Stevens entered the Residence, they opened an air conditioner vent because, in previous incidents, people had hidden there.

Deputy Stevens testified that he was present when Baker first came to the sheriff's office to have Morgan and any non-residents at her home evicted and reported seeing a gun lying on the kitchen island. When he and the other deputies arrived at the Residence, they did not immediately see the gun, so they began a search to clear the house. Deputy Stevens

assisted in opening the air vent and, upon seeing Graham crouched down inside, noticed the guns were only "an inch away from his hand. Right next to him."

The following conversation was recorded on Deputy Stokes's body camera and heard by the jury:

MR. STEVENS:      Get Up.

MR. STOKES:      Come on Out.

MR. STEVENS:      Do not touch that gun.

MR. GRAHAM:      Them ain't my guns.

MR. STEVENS:      I will shoot you in the fucking face.

MR. GRAHAM:      Them ain't my guns.

MR. STEVENS:      I don't care don't touch it.

After the State rested, Graham moved for a directed verdict on both counts at the close of the State's case-in-chief, arguing that there was insufficient proof that he knowingly possessed the two guns. The circuit court denied the motion.

Jacquavious Berry testified on behalf of Graham that the Ruger was his, and he had left it at the Residence the day before. He said "I was drinking and I didn't want to bring it – I take it with me, so I left it out there for Nate to get it and he 'posed to put it up for me 'til the next day." After Berry testified, Graham rested.

Graham renewed his motion for directed verdict. The court again denied the motion. The jury found Graham guilty of two counts of possession of a firearm by certain persons.

Graham was sentenced to five years for each count to run consecutively for a total of ten years in the Arkansas Division of Correction.

Graham now appeals and challenges the sufficiency of the evidence supporting his conviction. He argues that there was not substantial evidence for the jury to determine that Graham had any control or dominion over the guns in the air vent. Graham further argued in this appeal that there was no evidence that he owned the guns or that he knew the guns were close to him in the air vent. We disagree.

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence.[1] When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.[2]

We defer to the jury's determination on the matter of witness credibility.[3] Jurors do not, and need not, view each fact in isolation; rather, they may consider the evidence as a whole.[4] The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can be drawn from direct evidence.[5] The jury may resolve questions

---

[1] *Price v. State*, 2019 Ark. 323, at 4, 588 S.W.3d 1, 4.

[2] *Id.*, 588 S.W.3d at 4.

[3] *Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008).

[4] *Id.*

[5] *Id.*

of conflicting testimony and inconsistent evidence and may choose to believe the State's account of facts rather than the defendant's.[6] We need only consider testimony that supports the guilty verdict.[7] Circumstantial evidence may provide the basis for a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable basis.[8]

A person violates the statute titled "Possession of firearms by certain persons" if he or she has been convicted of a felony and possesses and/or owns a firearm.[9] If the conviction was for a violent crime, then that person commits a Class B felony.[10] Graham stipulated that he had been convicted of violent crimes. Thus, the only issue before us is whether Graham was in possession of the guns at the time of his arrest.

Possession of a firearm by certain persons requires a showing that the defendant "possessed" the firearm. It is not necessary that the State prove actual possession of the firearm--constructive possession will suffice.[11] A showing of constructive possession of the contraband is sufficient to prove possession of a firearm.[12]

---

[6]*Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007).

[7]*Steadmon v. State*, 2024 Ark. App. 586, 701 S.W.3d 69.

[8]*Id.*, 701 S.W.3d 69.

[9]Ark. Code Ann. § 5-73-103(a)(1) (Repl. 2024).

[10]Ark. Code Ann. § 5-73-103(c)(1).

[11]*Steadmon*, 2024 Ark. App. 586, 701 S.W.3d 69.

[12]*Id.*

To prove constructive possession, the State must establish that the defendant exercised "care, control, and management over the contraband." There must be some evidence that the accused had knowledge of the presence of the contraband.[13] The defendant's control over and knowledge of the contraband can be inferred from the circumstances, such as proximity of the contraband to the accused, the fact that it is in plain view, the ownership of the property where the contraband is found, and the accused's suspicious behavior.[14] Location of the contraband in close proximity to the defendant has been held to be a sufficient linking factor to support a constructive-possession conviction.[15]

There was significant evidence that Graham had constructive possession of the guns. His suspicious behavior--hiding in the air vent when the police arrived--along with the guns' proximity to him (being an inch from his hand), and his acknowledgment of their presence by stating, "Them ain't my guns" supports a finding of constructive possession. This was all uncontroverted by the body-camera footage. Even if the jury found Berry's testimony credible and that it supported Graham's claims that the guns were not his, the fact that both Graham and the guns were in the air vent--an unusual place for either--makes it reasonable for the jury to conclude that the guns were in his possession when he was found by the deputies. We have held that "[a]n accused's suspicious behavior coupled with proximity to

---

[13]*Id.* at 8, 701 S.W.3d at 74 (quoting *Black v. State*, 2015 Ark. App. 83, at 6, 455 S.W.3d 336, 340).

[14]*Id.*

[15]*Id.*

the contraband is clearly indicative of possession".[16] We will affirm a judgment of conviction if substantial evidence exists to support it.[17]

For these reasons, we affirm.

Affirmed.

WOOD and BROWN, JJ., agree.

*Vicki Lucas*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.

---

[16]*McDaniels v. State*, 2019 Ark. App. 66, at 3, 571 S.W.3d 43.

[17]*Price*, 2019 Ark. 323.