Cite as 2025 Ark. App. 252

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-24-335

| | |
|---|---|
| JULIAN WILLIAMS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered April 23, 2025<br><br>APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NOS. 73CR-20-147; 73CR-21-982]<br><br>HONORABLE MARK PATE, JUDGE<br><br>AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER |

**CINDY GRACE THYER, Judge**

Julian Williams appeals his White County Circuit Court convictions in two separate cases following a combined bench trial. On appeal, he challenges the sufficiency of the evidence to support his convictions as well as the circuit court's denial of his motions to suppress. Finding no error, we affirm.

On February 3, 2020, the Central Arkansas Drug Task Force (CADTF) obtained a warrant to search room 142 of the Quality Inn & Suites in Searcy, Arkansas. The warrant was based on information obtained from a controlled buy conducted with an unnamed confidential informant (CI).[1]

---

[1]As part of the controlled buy, the CI purchased a quantity of suspected marijuana from Williams in the hotel room designated in the warrant. After the buy, the confidential

Officers from the CADTF executed the warrant that same afternoon. The search yielded five large and two smaller plastic bags containing suspected marijuana; three plastic bags containing suspected methamphetamine; and one plastic bag containing suspected crack cocaine. Eight vape cartridges containing 90 percent THC and a glass pipe with burn marks and residue were found on a nightstand inside a box marked with the name "Sarah." The officers also collected an RCA tablet and four cell phones from the hotel room as well as approximately $2,000 from Williams and his girlfriend, Sarah Schroyer.

As a result of the evidence collected pursuant to the search warrant, Williams was charged by information in 73CR-20-147 with one count of possession of more than two but less than ten grams of methamphetamine with purpose to deliver; one count of possession of more than two but less than ten grams of cocaine with purpose to deliver; one count of possession of more than four ounces but less than twenty-five pounds of marijuana with purpose to deliver; one count of possession of drug paraphernalia; one count of maintaining a drug premises; and one count of unlawful use of a communication device.

On November 3, 2021, Williams was found slumped over in the driver's seat of his vehicle. It took officers several attempts to wake Williams. After waking him, officers inquired about the strong odor of marijuana emanating from the vehicle. In response, Williams produced a small baggie containing a green leafy vegetable material. A subsequent

informant reported there were multiple large bags of marijuana and methamphetamine being stored inside a refrigerator in the hotel room.

2

search of the vehicle produced a small baggie of an off-white crystal-like substance, which field-tested positive for methamphetamine.

Following this interaction, Williams was charged in 73CR-21-982 with one count of possession of less than two grams of methamphetamine and one count of possession of less than four ounces of marijuana.

On March 13, 2023, Williams moved to suppress the evidence in both cases. As to the first, he argued that the search warrant was issued without probable cause and not subject to the "good faith" or any other exception to the valid warrant requirement. As to the second, Williams argued that there was no probable cause to arrest him and that any arrest was pretextual.

Both cases were tried together on October 6, 2023. At the outset of the trial, Williams's counsel agreed to have the evidence related to his motions to suppress be presented contemporaneously with the trial on the merits.

The first witness presented by the State was Sam Webb, a member of the CADTF. He testified regarding the execution of the search warrant for the hotel room in 73CR-20-147. When Agent Webb began to testify regarding the basis for the search warrant, Williams asserted a hearsay objection, claiming that the name of the CI had not been released and that his constitutional right of confrontation would be violated since he had not had the opportunity to cross-examine the CI. The court denied the motion to suppress, finding that Williams's confrontation rights were not violated by the introduction of nonhearsay testimony.

After the court's ruling, Agent Webb informed the jury that the search warrant had been obtained after the CI conducted two controlled buys—one for methamphetamine and one for marijuana. After conducting the controlled buys, the CI reported to the officers that there was a larger quantity of narcotics being stored in the hotel room where the marijuana was purchased and that other persons were in the room with Mr. Williams.

He then testified that, during the execution of the warrant, officers announced their presence but ultimately had to force entry into the room. Williams and Schroyer were taken into custody at that time. When officers entered the room, they saw a large quantity of narcotics in plain view. On a nightstand, they found methamphetamine, marijuana, crack cocaine, and related drug paraphernalia, including a glass pipe with narcotic residue; and a box labeled "Sarah" containing multiple THC vape cartridges, wrapping papers, currency, and other forms of paraphernalia and narcotics. They discovered additional currency in a purse inside the hotel room. Williams's driver's license was also discovered in the hotel room.

Agent Webb reported that the execution of the search warrant yielded five large bags of suspected marijuana weighing approximately 429 grams, 151.5 grams, 177 grams, 306 grams, and 447.6 grams; two smaller bags of suspected marijuana weighing 3 grams and 4.5 grams; a bag of suspected crack cocaine weighing approximately 5.7 grams; and three bags of suspected methamphetamine weighing 1.2 grams, 0.2 grams, and 0.7 grams. These items were submitted to the state crime laboratory.

He then explained that the state crime lab analyzed only three of the items submitted— one substance tested positive for marijuana, one for methamphetamine, and one for cocaine.

4

The weights on the tested narcotics were 411.1 grams, 0.9929 grams, and 5.1703 grams, respectively.

While Williams objected to the introduction of the items not tested by the crime lab, he did not object to the items that had been tested and that had tested positive. The court allowed the admission of the evidence but stated that it would determine the weight to be given the evidence given that the crime-lab technician, whose testimony was waived by the defense before trial, was not there to testify.

On cross-examination, Agent Webb testified that there were two people arrested that day—Williams and Schroyer. He stated he was at the hotel room when the warrant was executed but not when the arrests were made. He did not recall a third person being arrested at that time; nor did he recognize the name John Sparrow. He was not aware in whose name the hotel room had been rented nor could he testify as to how long Williams had been in the room before the execution of the search warrant. However, he believed Williams had been there for more than thirty minutes. As for Schroyer, he stated that it was his understanding that she had entered into a plea agreement, but he was unaware of the sentence she received.

The State next called White County Sheriff's Deputy Paul Hofstad, who also worked with the CADTF. Deputy Hofstad testified that he was involved in the controlled buys with the CI before the execution of the search warrant. He stated that the first buy occurred the morning of February 3, 2020, at the Briarwood apartments and that the CI purchased

methamphetamine from Williams. The second buy was conducted at the Quality Inn in Searcy, where the CI purchased marijuana from Williams.

Deputy Hofstad testified that he was also present during the execution of the search warrant at the hotel. He stated that whoever answered the door of the room slammed and locked the door. Entry was made after that. He stated that there were two individuals present, and he saw marijuana and "things" lying around. He testified he was not very involved with the processing of the evidence; Agent Webb was.

On cross-examination, Deputy Hofstad admitted that a search warrant had not been executed on the Briarwood home. He further admitted that he was not aware of who was present at that location during the Briarwood buy, but he testified that video confirmed Williams and the CI were there. He was also not aware of who owned the Briarwood house or brought the drugs into it. He also did not know how long Williams had been at the Quality Inn before the execution of the search warrant or how he got from the Briarwood home to the Quality Inn. He stated that Williams and a female were present at the Quality Inn during the execution of the search warrant, but did not know if a third person, Josh Sparrow, was. He also did not know who the hotel room was registered to.

Officer Josh King was the next to testify. He testified he was not involved with the controlled buy at the Briarwood location, but he had assisted with the execution of the search warrant at the Quality Inn. He testified that as they approached the room, he saw Williams through a window. Williams bolted the door shut. After gaining entry into the room, Officer King saw four or five bags of suspected methamphetamine on a table as well as a bag of

suspected marijuana. He remembered only Williams and a female being in the room at that time. He did not know who the hotel room was registered to or how long Williams had been there.

Officer Josh Middleton was involved in both the execution of the search warrant and with Williams's arrest in November 2021. As to the first, he said that as they approached the hotel room through a breezeway, they could see Williams through a large window. He saw Williams lock the door to the room. He ordered Williams to open the door, and when Williams refused, they forced entry into the room. He stated that he stepped into the room in order to help detain the people inside but did nothing else. While he could only remember that Williams was present, he vaguely remembered a woman being there as well. He also did not know to whom the hotel room was registered.

After this testimony, the State rested on 73CR-20-147, and Williams moved for "directed verdict" and argued his motion to suppress. Concerning the motion to suppress, he argued that the information from the CI was not sufficient to provide probable cause and that the search was unreasonable. As for the sufficiency of the evidence, he argued that there were at least two, possibly three, people in the hotel room; there was no evidence as to whom the hotel room was registered; and there was no evidence as to the ownership of the drugs seized. There also was no evidence as to how long Williams had been in the hotel room or whether he brought the drugs there. He claimed that it was just as likely he was there only to visit his girlfriend. He further argued that the crime lab tested only three of the items and that those items are the only ones he could be charged with possessing.

The State responded that the search warrant met the requirements of Arkansas Rule of Criminal Procedure 13.1 in that it described the place to be searched and the things to be seized, and it was supported by an affidavit setting forth facts and circumstances showing that those things were in the place to be searched and included facts bearing on the CI's reliability. The State noted that Deputy Hofstad and Agent Webb both testified that they had received information from the informant, and the controlled buys they conducted that day had been successful. Deputy Hofstad also testified that he had used the CI in the past and that the CI had provided information in the affidavit that was against the CI's own interest. Under these circumstances, the affidavit and facts supporting the issuance of the search warrant were sufficient.

Concerning the sufficiency of the evidence presented, the State argued, with respect to the charge of maintaining a drug premises, that there is no time requirement for occupancy, so evidence as to how long Williams was there was not needed. As for the possession charges, the State claimed it was unnecessary to present evidence of who brought the drugs into the hotel room: constructive possession is inferred because the occupants were jointly controlling the drugs. The State noted that, here, the multiple bags of drugs were found in the open. As for Williams's claim that he was only there to visit his girlfriend, the State highlighted the testimony regarding Williams's slamming and locking the door when the police approached and refusing their entry.

The court denied the motion to suppress and the motion for directed verdict.

Williams then presented his evidence in defense of the charges in 73CR-20-147. Williams testified that Kristie Schauffner drove him to the hotel to visit his girlfriend, Sarah Schroyer. He stated that Schroyer had rented and paid for the hotel room for them because they had to move out of the Briarwood residence. Williams claimed Josh Sparrow brought the drugs to the room and that the drugs were there when he got there. He stated that he had been there approximately thirty to forty-five minutes before the police arrived, while Schroyer had been there a couple of hours.

As to the execution of the warrant, he admitted that he looked out the window and saw the police coming, panicked, and latched the door. Williams claimed that Sparrow opened the door, and when he did so, Williams put his hands behind his back, and lay down on the bed. The officers came in, placed them in handcuffs, and put him and Sparrow into the back of an SUV. Williams claimed that Sparrow was released while he remained in jail until he bonded out. He said Schroyer was sentenced to probation on her charges.

Williams denied the drugs were his or that he was guilty of any of the charges. He claimed he did not know the drugs were there until he looked in the refrigerator where the marijuana was being kept. If he had known there were drugs there, he would not have gone to the hotel room. He testified that the officers searched his room at the Briarwood apartment, but all they found was a little marijuana, some money, and some scales. They did not find any methamphetamine.

On cross-examination, Williams admitted he had sold drugs in the past but denied selling the drugs from the hotel room. He also admitted giving some marijuana to

Schauffner's boyfriend free of charge. He said the marijuana was not his to give but that he was just trying to get rid of Schauffner's boyfriend. He asserted that did not sell marijuana, he smoked it. He denied there were drugs in plain sight and denied seeing any there.

At the close of his testimony, counsel renewed his motions, which the court again denied.

The State then presented its evidence in 73CR-21-982. Officer Middleton testified that, while assisting the Arkansas Division of Correction with an unrelated matter, he saw Williams alone with his eyes closed and slumped over the steering wheel of a vehicle. It was unknown at the time if Williams was suffering from a medical issue, if he had overdosed, or if he had just passed out or was asleep. It was unclear how long he had been there. Officer Middleton made contact and attempted several times to rouse him. While doing so, Officer Middleton recognized the stale odor of marijuana. When Williams awoke, Officer Middleton told him he smelled marijuana, and in response, Williams handed him a bag of marijuana. At that point, Williams was "detained." A subsequent search of the vehicle turned up a small amount of methamphetamine. Williams was then taken into custody.

On cross-examination, Officer Middleton stated that he searched the vehicle because of the smell. He asserted that Williams's surrender of the small bag of marijuana did not negate the possibility that there was additional marijuana in the vehicle; therefore, he searched the car for any other contraband that might be in the vehicle.

The State then called Officer Laurel Sexton. She testified that she was performing parole searches when they encountered Williams in his vehicle. During that interaction,

Officer Middleton handed her a small bag of marijuana and a small bag of methamphetamine. She packaged the items and sent them to the crime lab. The crime-lab report stated that one of the bags tested positive for 0.3028 grams of methamphetamine. The other bag was not tested but contained vegetable material weighing 2.2981 grams. Officer Sexton testified that the amount of methamphetamine was small and likely for use and not sale.

Again, counsel moved for a directed verdict. As for the marijuana, he argued there was no evidence that the vegetable-like material was marijuana. As for the methamphetamine, he argued that the drugs should have been suppressed because the officers lacked probable cause to search the vehicle after Williams handed the officers the bag of marijuana. As for sufficiency, he claimed that the amount of methamphetamine was so small, it was likely not a useable amount.

The State countered that, once Williams handed the marijuana to the officer, his arrest was valid, and because of the circumstances surrounding their contact with Williams and the smell of the marijuana, officers had reasonable cause to believe additional drugs could be in the vehicle. As for the marijuana not being tested, the State argued that the officer smelled marijuana, and after informing Williams of the marijuana odor, Williams handed over the bag containing what appeared to be marijuana.

The court denied the motions. The defense then rested without putting on any testimony on those charges and renewed its motions. The court again denied the motions.

After a brief recess, the court found Williams guilty of possession of cocaine with purpose to deliver (2–10 grams); possession of methamphetamine with purpose to deliver (less than 2 grams); possession of marijuana with purpose to deliver (4 oz. to 25 lbs.); possession of drug paraphernalia with purpose to inhale methamphetamine; and maintaining a drug premises in 73CR-20-147. The court found Williams not guilty of the use of a communication device. In 73CR21-982, the court found Williams guilty of possession of less than 2 grams of methamphetamine and acquitted Williams of the marijuana charge.

Williams timely appealed his convictions.

## I. *73CR-20-147*

On appeal, Williams argues that there was insufficient evidence to support his convictions in 73CR-20-147 and that the circuit court erred in denying his motions to suppress. He first argues that there was insufficient evidence establishing that he had any control or possession over the contraband found in the hotel room occupied and possibly rented by Schroyer. More specifically, he claims that there was no proof that he rented or occupied the room long enough to exercise care, control, or management over the drugs recovered. He notes that he testified that he went to the hotel room to visit Schroyer who had rented the room; that he was there for only thirty to forty-five minutes; and that Josh Sparrow, who was also there, was the person who brought the drugs. He argues that officers could not dispute his claim that Sparrow was present, nor did they investigate who had rented the hotel room. Moreover, the box found on the nightstand was labeled "Sarah," and

the money was found inside a purse. He also challenged the crime lab's failure to test all the substances collected in the hotel room. He claims that the evidence was therefore insufficient to support his convictions in 73CR-20-147.

Although Williams moved for a directed verdict, a motion for directed verdict at a bench trial is a motion to dismiss. *Foster v. State*, 2015 Ark. App. 412, 467 S.W.3d 176. A motion to dismiss at a bench trial and a motion for a directed verdict at a jury trial are both challenges to the sufficiency of the evidence. *Id.*; *see* Ark. R. Crim. P. 33.1.

In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* The credibility of witnesses is an issue for the fact-finder. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Here, Williams was convicted of five charges: possession of cocaine with purpose to deliver (2–10 grams); possession of methamphetamine with purpose to deliver (less than 2 grams); possession of marijuana with purpose to deliver (4 oz. to 25 lbs.); possession of drug paraphernalia with purpose to inhale methamphetamine; and maintaining a drug premises.[2]

---

[2]Arkansas Code Annotated section 5-64-420(a) (Repl. 2016) states that it is unlawful if a person "possesses methamphetamine, heroin, or cocaine with the purpose to deliver the

13

His arguments do not break down these convictions individually, but it appears that he challenges only the "possession" elements of these crimes. All five of these crimes require the State to prove that Williams either possessed or kept contraband.

When possession of contraband is an element of the offense, the State is not required to prove literal physical possession. *Block v. State*, 2015 Ark. App. 83, 455 S.W.3d 336. Constructive possession is sufficient. *McKee v. State*, 2024 Ark. App. 538, 700 S.W.3d 509. To prove constructive possession, the State must establish that the defendant exercised care,

methamphetamine, heroin, or cocaine." Such possession is a Class C felony if the amount possessed is less than 2 grams and a Class B felony if between 2 grams and 10 grams. Ark. Code Ann. § 5-64-420(b)(1) & (2).

Arkansas Code Annotated section 5-64-436 (Repl. 2016) makes it unlawful for a person to possess marijuana, a Schedule VI controlled substance, with the purpose to deliver. This crime is a Class C felony if the amount possessed is between four ounces and twenty-five pounds. Ark. Code Ann. § 5-64-436(b)(3).

Arkansas Code Annotated section 5-64-443 (Supp. 2023) makes it illegal for a person to possess drug paraphernalia with the purpose to use the drug paraphernalia to inject, ingest, inhale, or otherwise introduce into the human body a controlled substance. This crime is a Class D felony if the controlled substance is methamphetamine. Ark. Code Ann. § 5-64-443(a)(2).

Arkansas Code Annotated section 5-64-402(a)(2) (Repl. 2016) provides that it is unlawful for any person "[k]nowingly to keep or maintain any store, shop, warehouse, dwelling, building, or other structure or place or premise[s] that is resorted to by a person for the purpose of using or obtaining a controlled substance in violation of this chapter or that is used for keeping a controlled substance in violation of this chapter."

Arkansas Code Annotated section 5-64-419 (Supp. 2023) makes it unlawful for a person to possess methamphetamine. If the substance possessed has an aggregate weight of less than two grams, the possession is classified as a Class D felony. Ark. Code Ann. § 5-64-419(b)(1)(A).

control, and management over the contraband. *Block*, *supra.* We look to whether the contraband was located in a place that was under the dominion and control of the accused. *McKee*, *supra.* Constructive possession may be inferred when the contraband is in the joint control of the defendant and another person. *Id.* Joint occupancy alone is not sufficient to establish possession or joint possession; there must be some additional factor linking the accused to the contraband. *Id.* In joint-occupancy cases, the State must prove two additional elements: (1) the accused exercised care, control, and management over the contraband, and (2) the accused knew the matter possessed was contraband. *Id.* The defendant's control over and knowledge of the contraband can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, the ownership of the property where the contraband is found, and the accused's suspicious behavior. *McKee*, *supra.*

Here, there was sufficient evidence from which the court could find Williams either possessed or kept the contraband at issue. The contraband was found in plain sight in the hotel room in which Williams was an occupant. While there was no evidence that he rented the hotel room himself, he admitted that Schroyer rented the room for them because they were having to move out of the Briarwood residence. He also closed and locked the door to the room to prevent the officers from entering. Finally, he testified that he took marijuana from the refrigerator and gave it to Schauffner's boyfriend. He alone decided not to charge the boyfriend for the drugs. This shows knowledge and control over both the drugs and the premises in which they were located.

Second, as for maintaining a drug premises, to the extent Williams argues that there was no evidence that he rented the hotel room where the narcotics were found, his argument also fails. Neither ownership of the dwelling nor a current lease is an element of the crime of maintaining a drug premises. *Chambers v. State*, 2024 Ark. App. 470, 698 S.W.3d 422; *Cantrell v. State*, 2024 Ark. App. 201; *Curtis v. State*, 2015 Ark. App. 167, 457 S.W.3d 700. Here, as noted above, there was evidence that Schroyer rented the hotel room for both of them to live in because they could no longer live in the Briarwood residence. His driver's license was also found inside the hotel room. Moreover, the drugs were found in plain sight in the room where he was found, and the drugs were in sufficient amounts to suggest more than just personal use—meaning they were not hidden or unknown to him. In fact, he testified that he took marijuana from the refrigerator, gave it to Schauffner's boyfriend, and decided not to charge him for it. Thus, there was sufficient evidence to establish that Williams was connected to the hotel room and knew drugs were being distributed from the premises. Accordingly, substantial evidence supports Williams's conviction for maintaining a drug premises.

Finally, with regard to the crime lab's failure to test all the drugs seized during the execution of the search warrant, it was unnecessary for it to do so. Williams was convicted of possession of cocaine with purpose to deliver (2–10 grams); possession of methamphetamine with purpose to deliver (less than 2 grams); and possession of marijuana with purpose to deliver (4 oz. to 25 lbs.). The crime-lab report confirmed that one of the bags tested contained 5.1703 grams of cocaine; one contained 0.9929 grams of

16

methamphetamine; and another contained 411.1 grams (or 14.501 ounces) of marijuana—amounts sufficient to support his convictions. Thus, he was not convicted for possessing the drugs not tested and, therefore, cannot claim prejudice for the crime lab's failure to test them.

Williams next argues that the circuit court erred in denying his motion to suppress the evidence collected during the execution of the search warrant. That warrant was based on information provided by the CI. He challenges the circuit court's refusal to force the State to disclose the CI's identity, which denied him the opportunity to question or cross-examine the CI in violation of the Confrontation Clause. He argues that, in this case, it was undisputed that there were at least two people in the hotel room where the CI allegedly purchased marijuana from him. He claims that none of the officers testified that they saw Williams sell the drugs to the CI or that they had any other evidence tying him to the drugs found in the hotel room. The video of the purchases was not introduced or seen by the court. All information concerning how long Williams had been in the room was provided by the CI and was not independently verified by the officers.

Williams's claims are not truly suppression arguments. The testimony regarding the buys was not hearsay since it was not introduced to prove the truth of the matter asserted; nor did it form the basis of his convictions—that is, he was not convicted of selling the drugs to the CI. Instead, the testimony regarding the controlled buys only formed the basis upon which the officers obtained the search warrant. As such, the Confrontation Clause is not implicated. The United States Supreme Court has held that "admission of non-hearsay

17

'raises no Confrontation Clause concerns.'" *United States v. Inadi*, 475 U.S. 387, 398 n.11 (1986) (quoting *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). "Cross-examination regarding such statements would contribute nothing to Confrontation Clause interests." *Id.* Given that the Confrontation Clause is not violated by the introduction of nonhearsay testimony, there was no error.

As to the court's failure to disclose the identity of the CI, that was not erroneous, either. Arkansas Rule of Criminal Procedure 17.5(b) provides that "[d]isclosure shall not be required of an informant's identity where his identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant." When the disclosure of the CI's identity is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the privilege must give way. *Reyes v. State*, 329 Ark. 539, 552, 954 S.W.2d 199, 205 (1997). We review a court's decision to deny a request to reveal the identity of a CI for an abuse of discretion. *Id.*

Here, the failure to disclose the identity of the CI did not infringe upon the constitutional rights of the defendant. The information obtained from the CI merely provided the basis for the execution of the search warrant; it did not provide the factual basis for any of the possession crimes for which Williams was ultimately convicted. This court has not required disclosure of the identity of a CI where the defendant was charged only with possession and the CI merely supplied information leading to the issuance of the search warrant. *Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994); *see also Jackson v. State*, 283 Ark. 301, 675 S.W.2d 820 (1984). Here, the CADTF executed the warrant and found

18

Williams at that location with the drugs. The evidence showed that Williams was present in the hotel room, which had been rented at least in part for his benefit; drugs were present and in plain view; and he attempted to prevent the officers from entering the room. Thus, even without the information from the CI, there was sufficient evidence to convict him of the crimes for which he was charged. As such, the identity of the CI was not relevant.

## II. *73CR-21-982*

The final issue on appeal relates to Williams's convictions in 73CR-21-982. Williams claims that the court erred in denying his motion to suppress the evidence seized as a result of their search of his vehicle. He states that the probable cause cited to search his vehicle was the smell of marijuana. However, he had already provided officers with a bag of marijuana; therefore, he claims probable cause no longer existed, and the search should have stopped. This simply is not the case. First, officers were not required to believe that Williams possessed only one bag of marijuana. Second, once Williams was found to have possessed marijuana, officers had cause to arrest him and conduct a search of the vehicle incident to arrest. A search is valid as incident to a lawful arrest even if conducted before the actual arrest as long as the arrest and search are substantially contemporaneous, and probable cause to arrest existed prior to the search. *Blockman v. State*, 69 Ark. App. 192, 11 S.W.3d 562 (2000). Here, Deputy Middleton had probable cause to arrest Williams for possession of marijuana, and he also had the authority to conduct a search incident to that arrest. *Dougan v. State*, 2023 Ark. App. 75, 660 S.W.3d 375. Thus, the motion to suppress was properly denied.

## III. *Sentencing Errors*

19

Finally, we note that there are two clerical errors in the sentencing order. The first involves Williams's status as a habitual offender. Williams was charged as a habitual offender, his prior convictions were introduced, and the jury sentenced him as a habitual offender. However, the box that would indicate Williams was sentenced as a habitual offender is not marked. In the second, the sentencing order erroneously cites Arkansas Code Annotated section 5-64-402(a)(1) rather than section 5-64-402(a)(2) on the maintaining-a-drug-premises charge. Williams was charged and convicted of the latter, not the former. A circuit court is free to correct a clerical error to have the judgment speak the truth. *Carter v. State*, 2019 Ark. App. 57, 568 S.W.3d 788. Thus, we affirm Williams's convictions but remand to the circuit court with instructions to correct the sentencing order.

Affirmed; remanded to correct the sentencing order.

GLADWIN and WOOD, JJ., agree.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.